INDIANAPOLIS ELKS BUILDING CORP. *v.* STATE BOARD OF TAX. COMMISSIONERS.

[No. 1168A183. Filed October 28, 1969. Rehearing denied November 24, 1969. Transfer denied February 6, 1970.]

*Kurt F. Pantzer, Jr., Royse, Travis, Hendrickson & Pantzer,* Indianapolis, *Ging, Free & Brand,* of Counsel, of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General and *Lloyd C. Hutchinson* and *James B. Droege,* Deputies Attorney General, for appellees.

PFAFF, C.J.—Appellant instituted this action in the Marion Superior Court No. 1 seeking a judgment to vacate, set aside and adjudge null and void a prior order of appellee State Board of Tax Commissioners which disallowed an asserted property tax exemption on real property owned by appellant. Thereafter, venue was changed to the Hancock Circuit Court.

Trial to the court resulted in the affirmance of appellees' order and judgment denying the property tax exemption. After hearing evidence, the trial court requested that the parties submit proposed findings of fact and conclusions of law thereon. The court accepted those submitted by and for the appellees and adopted them as the court's findings of fact and conclusions of law. They are as follows:

## "FINDINGS OF FACT

"1. The plaintiff, Indianapolis Elks Building Corporation, was incorporated on November 5, 1954, pursuant to the Acts of 1953, ch. 279, as amended, and as found in Burns IND. STAT. ANN. (1960), § 25-1540—25-1545, for the purposes and objects as follows:

### " 'ARTICLE IV

" 'The purposes or objects for which this Corporatoin is formed are, to acquire, own, hold, lease, mortgage, pledge, sell, convey and otherwise dispose of property, real and personal, for the sole and exclusive [benefit] of said Lodge No. 13, "M" Benevolent and Protective Order of Elks of United States of America, a fraternal organization within the meaning of that term as used in Chapter 279, Acts of 1953 of the Laws of the State of Indiana.'

"2. Indianapolis Lodge No. 13, "M" Benevolent and Protective Order of Elks, filed Articles of Association and Incorporation with the Secretary of State of Indiana on November 4, 1881, for the purposes and objects as follows:

" 'The objects of this Lodge shall be Charity, Justice, Brotherly Love and Fidelity to the members and brothers of the Order and to contribute to the relief of the widows and orphans of deceased brothers of the Order—and to further the interests of the order, pursuant and subordinate to the laws, rules and regulations of the Grand Lodge of the Benevolent and Protective Order of Elks.'

"3. On March 1, 1965, the plaintiff was the owner of the following described property: * * *, commonly known as 8603 North Township Line Road, along with certain improvements and personal property located thereon, which property is also identified for taxation purposes as Parcel No. 8-00-45462 Sec. 16 Twp. 17N Range 3E 16 Ac. & 498 C. THS., and personal property located thereon.

"4. The above described property was and is owned by the plaintiff and leased to Indianapolis Elks Lodge No. 13 and occupied and used entirely by Indianapolis Elks Lodge No. 13, its members, and their families and guests. The business of Indianapolis Elks Lodge No. 13 is conducted at regular weekly meetings and at other times through various committees, in accordance with the ritual and rules and regulations of the Grand Lodge, Benevolent and Protective Order of Elks of the United States of America.

"5. On April 19, 1965, the plaintiff filed with the Marion County Auditor its application for property tax exemption for the year 1965 upon the above-described property.

"6. On July 21, 1965, the Marion County Board of Review granted exemption to 100% of the assessed valuation of the plaintiff's real property, improvements and personal property.

"7. Thereafter, on April 15, 1966, the State Board of Tax Commisisoners gave notice to the plaintiff that said Board would review the action of the Marion County Board of Review in granting said exemption on April 27, 1966, at the City-County Building, Indianapolis, Indiana. On that date, the plaintiff appeared by its officers and counsel and presented evidence to a hearing officer of the State Board of Tax Commissioners. Upon the recommendation of the hearing officer and the evidence presented in support of said plaintiff's application for exemption, the State Board of Tax Commissioners, on July 18, 1966, denied entirely any exemption upon the real property, improvements, and personal property of the plaintiff for the year 1965. Thereafter, on August 17, 1966, the plaintiff brought this action for judicial review of said order of the State Board of Tax Commissioners denying exemption to the plaintiff.

"8. The improvements on the plaintiff's above-described real property were a swimming pool and bathhouse, and a large one-story building which contained facilities for Lodge meetings, dining and social events, a kitchen, a bar, game room, and offices.

"9. The primary purposes for which the plaintiff's property was used during the taxable year 1965 were for recreational and social activities and for ritual and regular meetings of the Indianapolis Elks Lodge No. 13 and for the entertainment and promotion of good will, fellowship, and fraternalism among the members of said Lodge. In 1965, activities conducted on the Lodge property included a Fourth of July Fireworks Display, Halloween Party, and Christmas Party for needy children, and the priests at Brebeuf School were allowed to swim in the pool free of charge, all of which activities were also participated in by the members of the Lodge and their families.

"10. The nature and extent of activities on the property claimed to be exempt were also indicated by the financial statements of the Lodge which showed a gross income in 1965 of $159,088.52, which was derived from the following major sources:

Members Dues and Initiations—$58,634.48;
Liquor—$39,195.84;
Beer—$7,772.93;
Food—$42,103.30;
Bingo and Card Games—$2,005.88;
Swimming Pool—$7,820.27;
Miscellaneous—$1,555.82.

These sources of income were derived from recreational, entertainment, and social activities, such as drinking, eating, dancing, playing cards and Bingo, swimming, and enjoying the fellowship of other members, all of which were activities actually conducted on the plaintiff's property.

"11. The financial statement of the Indianapolis Elks Lodge No. 13 showed donations to charities of $1,218.71, and other evidence indicated a total of charitable contributions in the amount of $4,580.75. The total of contributions claimed by the Indianapolis Elks Lodge No. 13 to be charitable was less than three percent (3%) of its gross income in the amount of $159,088.52. Except for the Christmas Party, Halloween Party, and Fourth of July Fireworks Display, and swimming pool privileges for the priests from Brebeuf School, none of these contributions represent a charitable activity conducted on the property claimed to be exempt.

"12. The Indianapolis Elks Lodge No. 13 was not incorporated, organized, or licensed under the laws of the State of Indiana, as a 'fraternal beneficiary association or fraternal benefit society,' nor did said Lodge make any contract or provision for the payment of benefits in accordance with the Indiana Insurance Law, Acts of 1935, ch. 162, §§ 181-208, as found in Burns IND. STAT. ANN. (1965), §§ 39-4401—39-4428.

## "CONCLUSIONS OF LAW

"1. The real property, improvements and personal property owned by the plaintiff, Indianapolis Elks Building Corporation, for the taxable year 1965, were not used exclusively for charitable purposes within the meaning of the Acts of 1919, ch. 59, § 5, as amended, and as found in Burns IND. STAT. ANN. (1967 Supp.), § 64-201, Part Fifth, and the Acts of 1953, ch. 279, § 5, as amended, and as found in Burns IND. STAT. ANN. (1967 Supp.), § 25-1544, and Article 10, Section 1 of the Constitution of the State of Indiana.

"2. The real property, improvements, and personal property of the plaintiff, Indianapolis Elks Building Corporation, during the taxable year 1965, were not used exclusively for any fraternal purposes within the meaning of any provision of the Acts of 1919, ch. 59, § 5, as amended, and as found in Burns IND. STAT. ANN. (1967 Supp.), § 64-201.

"3. The real property, improvements, and personal property of the plaintiff, Indianapolis Elks Building Corporation, during the taxable year 1965, were not used exclusively by and for the purposes of any fraternal beneficiary association, incorporated, organized, or licensed under the laws of the State of Indiana, within the meaning of the Acts of 1919, ch. 59, § 5, as amended, and as found in Burns IND. STAT. ANN. (1967 Supp.), § 64-201, Part Eleventh.

"4. The action of the defendants, State Board of Tax Commissioners, and the constituent members of said Board, in denying exemption from taxation to all of the real property, improvements and personal property of the plaintiff, Indianapolis Elks Building Corporation, for the year 1965, was not arbitrary, capricious, or illegal, but was a reasonable exercise of the authority granted by law to said State Board of Tax Commissioners, and therefore, the denial of exemption by said Board is upheld and the relief sought by the plaintiff is denied."

Appellant, Indianapolis Elks Building Corporation, submitted its motion for new trial, and the court's refusal to grant said motion is the error assigned. The motion for new trial and the memorandum in support thereof control the issues on appeal, and for this reason we recite them herein:

### "MOTION FOR NEW TRIAL

"The plaintiff in the above-entitled cause moves the Court for a new trial herein on each of the following grounds:

"1. The decision of the court is contrary to law.

"2. The court erred in failing to make and enter plaintiff's proposed finding of fact No. 8, which was as follows:

'8. The Subject Property and the funds and facilities of Elks Lodge 13 are used exclusively for the purposes of (a) the relief of poverty and distress of the members of Elks Lodge 13, their families and disadvantaged and worthy members of the general public, and of (b) the

improvement and promotion of the happiness of such persons through a program of brotherliness, good will, mutual benefit, benevolences and benefactions. The program of Elks Lodge 13, including social and recreational activities and expenditure of its funds, is in furtherance of such purposes.'

"3. The court erred in failing to make and enter plaintiff's proposed conclusion of law No. 2 which was as follows:

'2. The exemption from property taxes granted by Acts 1953, Chapter 279 to corporations organized thereunder, such as the plaintiff, which hold property for fraternal organizations, such as Elks Lodge 13, is consistent with and in furtherance of Article 10, Section 1 of the Indiana Constitution.'

"4. The court erred in failing to make and enter plaintiff's proposed conclusion of law No. 3 which was as follows:

'3. The occupancy and use of the plaintiff's Subject Property by Elks Lodge 13 is of a character which satisfied the requirements for full property tax exemption in accordance with the provisions of Acts 1953, Chapter 279.'

"5. The court erred in making and entering its conclusion of law No. 1 which was as follows:

'1. The real property, improvements and personal property owned by the plaintiff, Indianapolis Elks Building Corporation, for the taxable year 1965, were not used exclusively for charitable purposes within the meaning of the Acts of 1919, ch. 59, Sec. 5, as amended, and as found in BURNS IND. STAT. ANN. (1967 Supp.), Sec. 64-201, Part Fifth, and the Acts of 1953, ch. 279, Sec. 5, as amended, and as found in BURNS IND. STAT. ANN. (1967 Supp.), Sec. 25-1544 and Article 10, Section 1 of the Constitution of the State of Indiana.' "

## "MEMORANDUM

"The decision is contrary to law in the following particulars:

"1. It is not sustained by sufficient evidence.

"2. The defendant produced no witnesses concerning plaintiff's actual operations, and the trial court ignored the uncontradicted evidence of plaintiff's witness Fred E. Gilmore, plaintiff's top official, which conclusively supported plaintiff's tax exempt status.

"3. It disregards never heretofore questioned constitutional and legislative provisions of the State of Indiana supporting the following propositions:

A. The Indiana Constitution, at Article 10, Section 1, excepts from taxation property used for 'charitable purposes as may be specifically exempted by law' and gives the Indiana General Assembly power to select and define charitable purposes which are exempt.

B. The plaintiff is duly organized and operating under a statute, Acts 1953, Chapter 279, as amended, which specifically provides for tax exemption for 'property * * * regularly occupied and used by the fraternal organization for whose benefit such corporation was formed.'

C. The statute, Acts 1953, Chapter 279, as amended, is a 'specific exemption by law' enacted in conformity with the Constitution, whereby the legislature selects and defines fraternal organizations, such as Elks Lodge 13, to be organized and operated for charitable purposes.

D. The selection by the legislature of fraternal organization[s], such as Elks Lodge 13, and of their holding companies, such as the plaintiff, as charitable organizations is consistent with the spirit and the letter of the constitution, for the words 'charitable' and 'charity' are defined in common usage and by the courts to include not only the relief of poverty and distress but also the improvement and promotion of the happiness of mankind.

E. Elks Lodge 13, which is organized and operated for purposes of 'Charity, Justice, Brotherly Love and Fidelity' meets the constitutional and statutory definitions of a charitable organization.

"4. It flouts the decisions of the Indiana Supreme Court of more than 100 years standing and interpretations of the Attorney General of Indiana acquiesced in by the defendant and its predecessors and the Indiana General Assembly for generations."

Initially, we believe it essential to state that because of the importance of appeals involving the applicability of our property tax exemption statutes and the cases thereon, this court has conducted a thorough review of the record in this case to determine if there is any question as to the sufficiency of the evidence. The motion for new trial and memorandum thereon quoted above leave some doubt as to whether appellant places

at issue anything other than the argument that the decision is contrary to law. Thus, in all fairness, we have searched the record and conclude that the findings of fact entered by the trial court are fair, correct, and fully supported by the evidence. We are thus bound by those findings of fact and proceed to consider the substantial question, to-wit: Is the decision contrary to law?

As in all appeals which contain questions of significance as that here presented, this court must commence its discussion at the origin of the problem. Here, our point of embarkation is, of necessity, the Constitution of the State of Indiana. Article 10, § 1, of that instrument supplies the legal authority for tax exemption statutes and, as of the date of the commencement of this action on March 1, 1965, said section provided:

"§ 1. Assessment and taxation.—The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."[1]

The Indiana General Assembly fulfilled this constitutional mandate with the enactment of Acts 1919, ch. 59, § 5, p. 198, as last amended at the time of the filing of this action by Acts 1965, ch. 227, § 1, p. 541, the same being Burns' Ind. Stat. Anno. § 64-201 (1961 Repl.), which states in pertinent part as follows:

"The following property shall be exempt from taxation:
\* \* \* \* \*
"Fifth. Every building, or part thereof, used and set apart for educational, literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or incorporation, provided the same

---

[1] Art. 10, § 1, was amended effective as of November 8, 1966. However, these amendments in no way affect the issues to be decided in this case.

is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes, and every building owned and occupied, used and set apart for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any education[al] institution not exceeding fifty [50] acres; also the lands purchased with the bona fide intention of erecting buildings for such use thereon, not exceeding forty [40] acres; also the personal property endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid."

Of equal importance are Acts 1919, ch. 59, § 6, p. 198, being Burns' Ind. Stat. Anno. § 64-202 (1961 Repl.), which states:

"If all or any part, parcel or portion of any tract or lot of land or any buildings or personal property enumerated in the preceding section as exempt from taxation shall be used or occupied for any other purpose or purposes than those recited in said section by reason whereof they are exempted from taxation, such property, part, parcel or portion shall be subject to taxation so long as the same shall not be set aside or used exclusively for some one of the purposes specified in said enumeration."

It is most definitely established that the words "educational, literary, scientific, religious or charitable purposes," as used in § 64-201, *supra,* are to be defined and understood in their broad constitutional sense. *State Bd. of Tax Com'rs.* v. *Methodist Home For Aged* (1968), 143 Ind. App. 419, 241 N. E. 2d 84 (Transfer denied). This definition applies to the use of any property alleged to be exempt from property taxation. Thus, if property is owned and occupied by an organization to which the exemption applies, and the dominant use of the property by said organization is predominately and primarily[2] educational, literary, scientific, religious

[2] *State Board of Tax Comm.* v. *Indianapolis Lodge* (1964), 245 Ind. 614, 200 N. E. 2d 221.

or charitable within the broad constitutional definition of those words, the property is exempt from property taxation. This is the established procedure used to determine whether property is tax exempt. This procedure has been subject to numerous and very recent scrutinies by this court. We are satisfied that this method constitutes the only process whereby an organization engaging in the educational, literary, scientific, religious or charitable use of property, and claiming an exemption for the property so used, can determine if the use of said property meets the legal requirements which permit an exemption.

Fraternal organizations are, without question, entitled to property tax exemption if they can otherwise qualify under what we have heretofore stated to be the established procedures used in determining an exempt status, i.e., *dominant use of the property for charitable purposes in addition to ownership and occupancy.* Appellant, however, bases its claim for exemption on the theory that the Indiana General Assembly expressly declared appellant's property to be exempt with the enactment of Acts 1953, ch. 279, §§ 2 through 6, page 1002. The express provision of the Acts under which appellant claims an exemption is § 5, p. 1002, as last amended by Acts 1961, ch. 316, § 1, p. 884, being Burns' Ind. Stat. Anno. § 25-1544 (1969 Cum. Supp.), which provides in part:

> "Any and all property, real and personal, held by such corporation shall be exempt from taxation only with respect to such property, or part thereof, as is regularly occupied and used by the fraternal organization for whose benefit such corporation was formed."

The Acts 1953, *supra,* of which the above-stated provision is a part, is comprised of six sections, providing for the incorporation of holding companies for fraternal organizations. Appellant meets the requirements of incorporation under this act and is incorporated under this act in that it is a fraternal organization which exists under and by virtue of charter or

dispensation from a national governing body of a fraternal organization. The argument is, therefore, that appellant is entitled to property tax exemption under the provisions of § 25-1544, *supra,* notwithstanding §§ 64-201 and 64-202, *supra,* and the authorities thereon. Appellant contends that the statute is, in fact, a clear, unequivocal and constitutional dispensation of exemption. We do not agree with this proposition.

When the Indiana General Assembly enacted the statutes authorizing the incorporation of fraternal holding corporations, under which appellant claims an exemption, it did not amend the existing exemption statute, § 64-201, *supra,* so as to provide for the exclusive tax exemption of property held by a fraternal holding corporation under the provisions of § 25-1544, *supra.* We presume, therefore, that the General Assembly intended that while the ownership of the property could be vested in a holding corporation, the fraternal organization for whose benefit a holding corporation was formed was, in the opinion of the General Assembly, still required to occupy the property and to use that property for purposes expressly declared to be exempt by § 64-201, *supra.* The significance of §§ 25-1540-45 as those sections relate to the issue herein is that the General Assembly abrogated the prior legal requirement of ownership of the property by the fraternal organization and, instead, now permits the incorporation of a fraternal holding corporation which, by statute, can own the property without fear of abandoning property tax exemption. If the general assembly had failed to include the exemption provision of § 25-1544, *supra,* appellant fraternal holding corporation would be subject to property tax because the corporation, rather than the fraternal organization, would own the property and § 64-201, *supra,* would, therefore, not allow any exemption because it provides in part:

"The following property shall be exempt from taxation:

\* \* \* \* \*

"Fifth. Every building, or part thereof, used and set apart for educational, literary, scientific, religious or chari-

table purposes by any institution or by any individual or individuals, association or incorporation, *provided the same is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes,* * * *.'' (Emphasis supplied)

Thus, appellant is fortunate that the exemption provision in the fraternal holding corporation exists, for if it did not exist, the accepted principle of strict construction of exemption statutes would summarily prevent appellant's claim of exemption.

It is our opinion that § 25-1544, *supra,* must be construed with § 64-201, *supra,* if the former statute is to retain a constitutional interpretation. Specifically, we understand the exemption provision of § 25-1544, *supra,* to mean that a fraternal holding corporation is entitled to tax exemption when the property owned by said holding corporation leases or otherwise holds the property for a fraternal organization which uses it for an exempt purpose. Thus, the General Assembly has, within its constitutional authority, made a significant concession. The provision obviates the prior dual requirement of ownership and occupancy which would have previously disallowed for tax exemption purposes the ownership of the property in question by a fraternal holding corporation and use and occupancy by the fraternal organization as, under prior law, all three requirements were inseparable. Further, to state that the provision of § 25-1544, *supra,* stands alone as giving any corporation incorporated under § 25-1540, *supra, et seq.,* a per se exempt status on any property owned for the benefit of a fraternal organization would be an unconstitutional interpretation because the corporation's property could be used for purposes other than those enumerated in Art. 10, § 1, of the Constitution of Indiana and could still remain exempt. It can be seen that appellant's interpretation and argument would permit the corporation to own tax exempt property for the benefit of the fraternal organization, and that the property so owned could be used

in any manner, even in a manner inconsistent with the specific language of Art. 10, § 1, of the Constitution of Indiana, which states that the General Assembly shall provide for a uniform rate of property taxation "excepting such only for municipal, educational, literary, scientific, religious or charitable purposes, as may be specially exempted by law." Appellant's interpretation would lead one to believe that the General Assembly has exempted any property owned by a fraternal holding corporation, notwithstanding the fact that the property so owned by said corporation is used for any purpose whatsoever. If this was in truth the intent of the General Assembly, ch. 279, as amended, of the Acts of 1953, is unconstitutional. However, here, as in any case where the statute in question is subject to two interpretations, by one of which the statute would be constitutional, whereas by the other it would be invalid, this court will adopt the construction and interpretation which will uphold the validity and constitutionality of the statute. *Book* v. *State Office Bldg. Comm. et al.* (1958), 238 Ind. 120, 149 N. E. 2d 273. In upholding the validity of this statute we hold that property owned by a fraternal holding corporation for the benefit of a fraternal organization is exempt from taxation to the extent that the fraternal holding corporation is otherwise entitled to an exemption within the meaning of § 64-201, *supra*, as interpreted by case authority. We again refer to Art. 10, § 1, of our Constitution: If there is to be a uniform system of taxation as is mandated therein, it necessarily follows that there shall also be a uniform system of exemption. In view of this declaration, it is unconscionable that appellant's property be exempt simply because appellant is incorporated as a fraternal holding corporation. In claiming an exemption, appellant must rely upon § 64-201, *supra*, and we shall now proceed to determine if appellant meets the general requirements for exemption set forth earlier in this opinion, namely, § 64-201, *supra*, and the authorities thereon.

Appellant concedes that the constitutional test of the domi-

nant use of the property is still determinative of the question of exemption, but that the Legislature has applied the test to all property owned by fraternal holding corporations and occupied by a fraternal organization, and has declared that such property is, in fact, used for charitable purposes. We have heretofore stated that § 25-1544, *supra,* must be construed with § 64-201, *supra.* Thus, we do not agree that the Legislature has expressly declared, ipso facto, that property held by a fraternal holding corporation and occupied and used by a fraternal organization is used for a charitable purpose and is thus exempt. Property so held is subject to the provisions of § 64-201, *supra,* and if its dominant use is charitable, as that word is constitutionally defined, the exemption is applicable. The appellant admits, and we readily agree, that the courts of this state have the duty to determine whether or not the dominant use of the property may be said to be charitable. The record before us leaves us no alternative but to state that appellant is without what has heretofore been stated to be the "nebulous sanctuary of exemption."[3]

We are, of course, subservient to the established legal principle that the word "charity" is favored with the broadest constitutional definition allowable. The fact remains, however, that the use of the property in question is charitable only if we define that word as the appellant defines it, and this we shall not do because our definition of charity is contrary to the appellant's definition. Our definition is constitutionally liberal, while appellant's definition renders virtually every act of man and incorporation a tax-exempt charitable act. A thorough explanation is obviously necessary. The Supreme Court decision in the case of *City of Indianapolis* v. *The Grand Master, etc., of the Grand Lodge of Indiana* (1865), 25 Ind. 518, supplies the lasting but nebulous constitutional definition of charity. The court's eloquent statement is found on page 522.

---

[3] *State Board of Tax Com'rs.* v. *Warner Press, Inc.* (1969), 145 Ind. App. 20, 248 N. E. 2d 405, 18 Ind. Dec. 59.

"* * * It is not essential to charity that it shall be universal. That an institution limits the dispensation of its blessings to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization, does not, we think, deprive it either in legal or popular apprehension of the character of a charitable institution. If that only be charity which relieves human want, without discriminating amongst those who need relief, then indeed it is a rarer virtue than has been supposed. And if one organization may confine itself to a sex, or church, or city, why not to a given confraternity?"

The appellant's position is that the predominately social and recreational activities of Elks Lodge No. 13 are charitable because such activities promote and encourage the purposes for which said organization was incorporated, namely, charity, brotherly love, justice, fidelity, and Americanism. Therefore, it is stated that appellant, although not universal in its supposed charity, does relieve human want and suffering and that its charity is in accordance with charity as defined in *Grand Master, supra*. The appellant's facilities and activities undoubtedly suppress human want and suffering in addition to promoting brotherly love, justice, fidelity, etc. But these noble objectives can also be seen in the family home and at various other public and private establishments, all of which are not exempt from property tax. Both the record and the court's findings of fact plainly exhibit the fact that the property in question is used for drinking, eating, dancing, card games, swimming and general relaxation. These same activities exist at any good country club. The inescapable conclusion is that the dominant and primary purpose of the use of appellant's property is social. That the promotion of fidelity, charity, brotherly love and Americanism may be or is incidental to social and recreational activities does not justify a statement that the dominant use of the property is the promotion of charity. In fact, the property is used to promote the same social and recreational activities as are encouraged by and the objects of any place of rest and relaxation, be it a

cocktail lounge or a country club. Further, we would hope that appellant, the family home and various other establishments whose programs are social and recreational deal regularly in the promotion of the happiness and good will of mankind. That appellant expressly states an intent or purpose to promote charity, etc., while other establishments do not openly exhibit such an intent, cannot be said to be a distinguishing factor. The appellant, therefore, is not unlike many other organizations, and the only real difference is that the appellant asserts that it is entitled to a property tax exemption which, as we have stated, we cannot allow. Having stated that appellant's social charity is not that charity which will justify an exemption, we now consider appellant's objective charity, i.e., its support of philanthropic endeavors.

While appellant's dues and social events generate substantial revenues, the court's findings of fact numbered 10 and 11 disclose that only three percent of appellant's gross income was devoted to charitable contributions. The fact that operating expenses are excessive, or that the lodge is operated at a loss, indicates the need for better financial management rather than a point of legal distinction. The essential fact is that appellant's social and recreational charity is no different from that provided by other organizations, notwithstanding the appellant's express purposes. The declaration of charity by an organization does not necessarily mean that the dominant use of the organization's property is of the form of charity which the law recognizes as entitling an organization to tax exemption. In *Grand Master, supra,* the Supreme Court was speaking of a charity which exhibits something more than the general social and recreational activities available to all segments of society. We hold, therefore, that on the record appellant's activities exhibit a use of the property which is not within even the most lenient constitutional definition of charity.

Our decision is not contrary to the recent Appellate Court decision in the case of *State Bd. of Tax Com'rs.* v. *Trustees of*

Adoniram L.O.P. (1969), 145 Ind. App. 300, 250 N. E. 2d 605, 18 Ind. Dec. 445, wherein it was held that the appellee fraternal organization was using its property for the dominant purpose of charity and was therefore exempt from property tax. There it was noted that the appellee's objective charity was substantial, and, further, the record in that case was without evidence of the predominant social activities exhibited by appellant herein. Indeed, charity such as will justify an exemption is more than a seal, a charter, and social activiites common to all of society. There must be evidence of relief of human want, and although the relief of such human want may alone be confined to the organization's membership, it must be manifested by obviously charitable acts different from the everyday purposes and activities of man in general. The record before us does not contain evidence of charitable acts such as will invoke the benefits of tax exemption.

The appellant cites the recent case of *State Board of Tax Com'rs.* v. *Methodist Home for Aged* (1969), 143 Ind. App. 419, 241 N. E. 2d 84 (Transfer denied), as also justifying appellant's claimed exemption. In addition to this authority, this court *sua sponte* has reviewed the two more recent decisions of *State Board of Tax Com'rs.* v. *Warner Press, Inc., supra,* and *Himes* v. *The Free Methodist Publishing House, et al.* (October 16, 1969), 145 Ind. App. 463, 251 N. E. 2d 486, to determine if there exists a point of law in appellant's favor or a conflict between this decision and the holdings of those cases. There is no conflict, and the rationale by which we upheld prior exemptions in those earlier cases cannot be applied because the record before us will not justify an exemption under any existing delicate interpretation of the law. In the *Methodist Home, Warner Press* and *Free Methodist* cases, *supra,* we were able to look to records which sufficiently established that the dominant use of the properties was religious, educational and charitable. We need not here recite why we so held, as the reasons are enunciated in the opinions themselves.

Additionally, appellant refers us to an opinion of the Attorney General and, further, the doctrine of legislative acquiescence. These issues were similarly raised in *State Bd. of Tax Com'rs.* v. *Trustees of Adoniram L.O.P., supra,* and therein Judge Hoffman stated:

> "In 1944, the Attorney General, at the request of the State Board of Tax Commissioners, issued an opinion in which he reviewed court decisions and past interpretations and practice of exempting property of Masonic and other similar organizations when the property was used for the purpose of the organization. In this opinion he interpreted the exemption statute to include property of Masonic organizations owned, occupied and used for its purposes.

> "This interpretation has been followed and adhered to for more than 20 years by those agencies dealing with tax exemptions. The Legislature has not, to date, changed the substantive law regarding such exempt property which shows a clear acquiescence of this interpretation. *Baker* v. *Compton,* 247 Ind. 39, 211 N. E. 2d 162 (1965).

> "Although such interpretation placed upon a statute may not be binding upon the court if such interpretation is clearly incorrect, it is entitled to considerable weight when it is necessary for the court to make an interpretation of a statute. *Baker* v. *Compton, supra.*

> "We can see no valid reason why the administrative interpretation acquiesced in by the Legislature should not prevail. "Property of Masonic bodies, which are educational or religious or charitable organizations or a combination of the three, owned, occupied, operated and used for its purposes is within the definition of exempt property under § 64-201, *supra.*"

While we accept this principle, the fact remains that the dominant use of appellant's property was not charitable. Therefore, notwithstanding the doctrine of legislative acquiescence and/or opinions of our Attorneys General, no exemption is allowable.

We conclude, therefore, that the judgment of the Hancock Circuit Court is not contrary to law and should be affirmed.

Judgment affirmed. Costs taxed against appellant.

542

Hoffman and Sharp, JJ., concur.

White, J., not participating.

NOTE.—Reported in 251 N. E. 2d 673.