SAHARA GROTTO ET AL. *v.* STATE BOARD OF
TAX COMMISSIONERS ET AL.

[No. 1168A185. Filed September 17, 1970. Rehearing denied October 21, 1970. Transfer denied December 23, 1970.]

*Roy A. Pope, Albert W. Ewbank,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Lloyd C. Hutchinson, James B. Droege,* Deputies Attorney General, for appellees.

SHARP, J.—In this case the Appellant Sahara Grotto and its real estate holding company, Appellant Styx, Inc. (now Sahara Grotto Building Corporation), appeal from a judgment below affirming the denial of an exemption from property tax by the State Board of Tax Commissioners for the year 1965.

The trial court made express findings of fact and conclusions of law which are as follows:

## FINDINGS OF FACT

1. The plaintiff, Sahara Grotto, Inc., was incorporated on May 4, 1929, under the laws of the State of Indiana, as a corporation organized not-for-profit, and for the purposes and objects as follows:

"The particular objects for which it is formed are to benefit the Symbolic Lodge, to provide a playground for Master Masons, and to Promote the fraternal and social welfare of the Veiled Prophets of the Mystic Order of the Veiled Prophets of the Enchanted Realm; to contribute when necessary to the relief of its members and those who are dependent upon them; to purchase and hold real estate in the City of Indianapolis, Marion County,

Indiana, and to improve and erect buildings thereon, to hold all personal property heretofore owned by the Sahara Grotto and purchased by virtue of the Charter granted by the Supreme Council of the Mystic Order of the Veiled Prophets of the Enchanted Realm on June 9, 1920; to purchase and to hold such additional personal property as may be necessary and suitable for conferring the ritual of the Order, to equip its cast and Uniformed Bodies, and to promote its social and fraternal objectives the said Corporation is further empowered to do any and all things necessary and desirable to promote the aims and purposes of the order and is possessed of all powers delegated to Corporations under the provisions of the Statute of its Incorporation."

2. The Plaintiff, Styx, Incorporated, was incorporated on December 14, 1936, under the laws of the State of Indiana, as a corporation organized not for profit and for the purposes and objects as follows:

"To buy, own, and sell real estate; to act as a holding company for SAHARA GROTTO M.O.V.P.E.R., To borrow and loan money incidental thereto, to execute all legal written instruments in the conduct and handling of the business of said corproation to buy and sell stocks and bonds incidental to said business, to accept bequests, devises and annuities and to do any and all things necessary and incidental and not inconsistent with the Ideals of SAHARA GROTTO M.O.V.P.E.R."

3. On the assessment date of March 1, 1965, the plaintiffs were the owners of the real property, improvements and personal property, as listed on their application for exemption, filed with the Marion County Auditor on April 2, 1965, and more particularly described as follows:

"Part of the Southwest Quarter (1/4) of Section 4 and part of the Northwest Quarter (1/4) of Section 9 in Township 15 North, Range 4 East, containing 5.78 acres and commonly known as 4107 E. Washington Street, Indianapolis, Marion County, Indiana."

"It is also identified for purposes of taxation as Parcels Numbered 1-01-9499 and 1-01-9500 and the improvements and personal property located thereon."

4. On July 23, 1965, the Marion County Board of Review granted exemption to one hundred per cent (100%) of the assessed valuation of plaintiffs' real property, improvements and personal property.

5. Thereafter, on December 29, 1965, the State Board of Tax Commissioners gave notice to the plaintiffs that said Board would review the action of the Marion County Board of Review in granting said exemption on January 10, 1966 at the City County Building, Indianapolis, Indiana. On that date, the plaintiffs appeared by their officers and attorney and presented evidence to a hearing officer of the State Board of Tax Commissioners. Upon the recommendation of the hearing officer and the evidence presented in supported of said plaintiffs' application for exemption, the State Board of Tax Commissioners, on January 20, 1966, denied entirely an exemption upon the real property, improvements and personal property of the plaintiffs, for the year 1965. Thereafter, on February 11, 1966, the plaintiffs brought this action for judicial review of said order of the State Board of Tax Commissioners denying exemption to the plaintiffs.

6. The improvements on plaintiffs real property consist of two brick buildings, two stories high, along with a boiler room which is contained in a one story brick building. Such buildings contained facilities for lodge meetings, dining and social events, a kitchen, a bar, offices and social rooms. The primary purpose for which plaintiffs' property was used during the taxable year 1965 was for recreational and social activities and for regular meetings of Sahara Grotto, its various committees and entertainment units. The purposes for which plaintiffs' property were regularly used during 1965, indicate (a) the events and activities and (b) the persons, groups and organizations were shown by the evidence to be as follows:

"a. 1. First Monday of every month is the Membership Stated Meeting.

2. Sahara Grotto Glee Club practices every Tuesday.

3. Sahara Grotto Drill Team practices every Wednesday.

4. Sahara Grotto Band practices every Thursday.

5. Sahara Grotto Drum Corp practices every Friday.

6. Dances on Saturday nights at which members were permitted guests—held in Auditorium.

| | | |
|---|---|---|
| 2-13-65 | 2-27-65 | 2- 6-65 |
| 3-13-65 | 3-27-65 | 4- 3-65 |
| 4-17-65 | 5- 1-65 | 5-22-65 |
| 6- 5-65 | 9-18-65 | 10- 2-65 |

| 10-16-65 | 10-30-65 | 11- 6-65 |
| 11-13-65 | 11-20-65 | 12- 4-65 |
| 12-18-65 | | |

7. All other Saturday nights—dances were held in Lalla Rock Room and members only were permitted.

8. Facilities closed on Sundays.

9. Following organizations of Sahara Grotto meet the second Monday of every month.
   a. Sahara Grotto Cast
   b. Sahara Grotto Revelers
   c. Sahara Grotto Clowns

10. The third Monday of every month is a meeting of Sahara Grotto and Styx, Inc.

11. The fourth Monday of every month is a meeting of the Board of Governors of Sahara Grotto and Styx, Inc.

12. Premises are used many times for committee meetings of various groups of Sahara Grotto organizing and programming functions of Sahara Grotto.

13. On Sunday 4-18-65—Easter Egg Party for children and grandchildren of membership.

14. On June 12, 1965, and November 12, 1965, Ceremonial Day for initiation of new members.

15. August 14, 1965, Granny Harker Picnic for crippled and underprivileged children of Marion County.

16. On December 18, 1965, Christmas Party for children and grandchildren of members.

17. Bingo parties held every Thursday night in the Auditorium and Saturday evenings in the dining room if Auditorium is not available for members, and guests are permitted.

18. The Bar is open every day except Sunday for members and their wives only."

"b. Sahara Grotto Band
Sahara Grotto Cast
Sahara Grotto Clowns
Sahara Grotto Drill Team
Sahara Grotto Drum Corps
Sahara Grotto Glee Club

Sahara Grotto Greeters
Sahara Grotto Horse Patrol
Sahara Grotto Revelers
Sahara Grotto Color Guard
Sahara Grotto Legion Post

7. The nature and extent of activities on the property claimed to be exempt was also indicated by the plaintiffs' financial statements, which showed that Sahara Grotto received a gross income in 1965 of $91,371.43, which was derived from the following major sources:

| | | |
|---|---|---|
| 1. | Members Dues | $25,428.00 |
| 2. | Bar & Dining Room Service | $16,973.45 |
| 3. | C. Allens Saturday Night Committee Parties Bingo Games | $13,397.68 |
| 4. | Uniformed Organization Thursday Night Parties: Bingo Games | $14,507.38 |
| 5. | Uniformed Organizations Transport Club Ticket Sales: Two Drawings on Automobiles | $ 2,371.60 |
| 6. | Saturday night dance admissions | $ 4,228.15 |
| 7. | Card Parties and smaller amounts derived from ticket sales to various parties: total | $ 1,162.30 |

These sources of income were derived from recreational and social activities such as drinking, eating, dancing, playing cards and bingo, which were actually conducted on plaintiffs' property.

8. The financial statement of Sahara Grotto for 1965 showed charitable donations of $3,307.12 which was less than four per cent of gross income which amounted to $91,371.43; except for the Granny Harker Picnic for crippled children which cost $83.90, none of these contributions represent a charitable activity conducted on the property claimed to be exempt.

9. The Sahara Grotto Relief Club was a separate voluntary organization composed of members who contribute to the Club, but not all members of Sahara Grotto were required to participate nor did all members actually belong to the relief club. Only those members who belonged to the relief club received benefits from it. Sahara Grotto Inc. was not incorporated, organized or licensed under the laws of the State of Indiana as a fraternal beneficiary association or fraternal benefit society, nor did Sahara Grotto,

Inc., make any provision for the payment of benefits in accordance with the Indiana Insurance Law, Acts of 1935, ch. 162, Sec. 181-208 as found in Burns' Ind. Stat. Ann. 1965 Sec. 39-4401—39-4428."

## CONCLUSIONS OF LAW

1. The real property improvements and personal property owned by the plaintiffs, Sahara Grotto, Inc., and Styx, Inc. for the taxable year 1965 were not used exclusively for charitable purposes within the meaning of Acts of 1919, ch. 59, Sec. 5, as amended and found in Burns Ind. Stat. Ann. 1967 Supp. Sec. 64-201 and Article 10, Sec. 1 of the Constitution of the State of Indiana.

2. The real property, improvements and personal property of Sahara Grotto, Inc. and Styx, Inc., during the taxable year 1965 were not used exclusively for any fraternal purposes within the meaning of any provision of the Acts of 1919, ch. 59, Sec. 5, as amended and as found in Burns' Ind. Stat. Ann. 1967 Supp., Sec. 64-201.

3. The real property, improvements and personal property of Sahara Grotto, Inc., and Styx, Inc., were not used exclusively as the property of any fraternal beneficiary association incorporated, organized or licensed under the laws of the State of Indiana within the meaning of the Acts of 1919, ch. 59, Sec. 5 as amended and as found in Burns' Ind. Stat. Ann. 1967 Supp., Sec. 64-201, Part Eleventh.

4. The action of the defendants, State Board of Tax Commissioners and the constituent members of said Board in denying exemption from taxation to all of the real property, improvements and personal property of the plaintiffs was not arbitrary, capricious, or illegal but was a reasonable exercise of the authority granted by law to said State Board of Tax Commissions and therefore the denial of exemption by said Board is upheld and the relief sought by the plaintiffs is denied.

Appellants' initial contention is that the General Assembly has specifically granted a property tax exemption to them by virtue of the Acts of 1953, ch. 279, §§ 2 through 6, page 1002, the exact section relied upon being Section Five (5), found as Burns' Ind. Stat. Ann. § 25-1544 (1969 Cum. Supp.). This contention is unequivocally negated and thoroughly explained by this court in *Indianapolis Elks Bldg. Corp.* v. *State Board*

*of Tax Comm'rs.,* 145 Ind. App. 522, 251 N. E. 2d 673, 679 (1969; trans. den. 1970). Likewise, Appellee's argument that Styx, Inc., as a fraternal holding company, may not be exempt under the above statute even if otherwise appropriate because Styx, Inc., was incorporated prior to the passage of the statute as discussed and denied in the *Elks* case. (145 Ind. App. at 522, 251 N. E. 2d at 680)

Appellants argue that through the doctrine of legislative acquiesence to the granting of property tax exemptions to Appellants in prior years by the appropriate administrative bodies, the Appellee State Board of Tax Commissioners is without power to deny their exemption. Appellants rely upon *Baker* v. *Compton,* 247 Ind. 39, 211 N. E. 2d 162 (1965) and *State Board of Tax Comm'rs* v. *Trustees of Adoniram L.O.P.,* 250 N. E. 2d 605 (1969). In the latter cited case, better known as the *Scottish Rite* case, before acknowledging the doctrine of legislative acquiesence this court independently and specifically found there was sufficient evidence to sustain the findings of the trial court that the property in question was used almost exclusively for the furtherance of the therein Appellee's educational, religious and charitable purposes. Judge Hoffman, speaking for this court, state at page 609 of 250 N.E. 2d:

> "We can see no valid reason why the administrative interpretation acquiesced in by the Legislature should not prevail.
>
> "Property of Masonic bodies which are educational or religious or charitable organizations or a combination of the three, owned, occupied, operated and used for its purposes is within the definition of exempt property under § 64-201, supra."

Thus the rule of legislative acquiesence applies to the taxing policy of the various administrative units. We do not understand that policy to have changed; herein is only the question of whether Appellants' factual situation fits the policy so as to justify an exemption.

As noted in the *Scottish Rite* case, there are two require-
ments which must be met before an exemption may be grant-
ed: ownership by an organization within the penumbra
■ contemplated by the statutes exempting property from
taxation, and use of the property consistent within the
statutory and Constitutional guidelines. Since *City of Indi-
anapolis* v. *Grand Master, etc., of Grand Lodge of Indiana*, 25
Ind. 518, 522 (1865), Indiana has recognized the Masonic or-
der as a charitable institution. The main issue presented to
this court in ruling upon the validity of the Appellants' claim
for property tax exemption is whether the legal definition of
the term "charitable" as it appears in the exemption statute
includes the kinds of activities and uses of Appellants' prop-
erty in 1965 as shown by the evidence.

The exemption statute, Acts 1919, ch. 59, § 5, p. 198 as
amended and as found in Burns' Ind. Stat. Ann. § 64-201(5)
reads in pertinent part as follows:

> "Every building, or part thereof, used and set apart for
> educational[,] literary, scientific, religious or charitable
> purposes by any institution or by any individual or indi-
> viduals, association or corporation, provided the same is
> owned and actually occupied by the institution, individual,
> association or corporation using it for such purpose or pur-
> poses, . . .; also the lands purchased with the bona fide
> intention of erecting buildings for such use thereon, not
> exceeding forty [40] acres; also the personal property, en-
> dowment funds, and interest thereon, belonging to any such
> institution. . . ."

The test employed is dominant use of the property for
■ the purposes which are exempt. *Indianapolis Elks Bldg.
Corp.* v. *State Board of Tax Comm'rs., supra.*

An examination of the Findings of Fact show that part of
Appellants' property was almost exclusively devoted to social
activities. The bar and dining room are prime examples.
These parts of Appellants' property are, of course, not exempt
from taxation. In *Indianapolis Elks Bldg. Corp.* v. *State
Board of Tax Comm'rs., supra,* this court noted those activi-

ties such as dining, drinking and dancing do not fall within the Constitutional definition of "charitable", saying at 682 of 251 N. E. 2d:

> "Both the record and the court's findings of fact plainly exhibit the fact that the property in question is used for drinking, eating, dancing, card games, swimming and general relaxation. These same activities exist at any good country club. The inescapable conclusion is that the dominant and primary purpose of the use of appellant's property is social."
>
>          \*   \*   \*
>
> "While appellants dues and social events generate substantial revenues, the court's findings of fact numbered 10 and 11 disclose that only three percent of appellant's gross income was devoted to charitable contributions. The fact that operating expenses are excessive, or that the lodge is operated at a loss, indicates the need for better financial management rather than a point of legal distinction. The essential fact is that appellant's social and recreational charity is no different from that provided by other organizations, notwithstanding appellant's express purposes. The declaration of charity by an organization does not necessarily mean that the dominant use of the organization's property is of the form of charity which the law recognizes as entitling an organization to tax exemption. In *Grand Master,* supra, the Supreme Court was speaking of a charity which exhibits something more than the general social and recreational activities available to all segments of society. We hold, therefore, that on the record appellant's activities exhibit a use of property which is not within even the most lenient constitutional definition of charity."

"Our decision is not contrary to the recent Appellate Court decision in the case of *State Bd. of Tax Comm'rs* v. *Trustees of Adoniram L. O. P.* (1969), Ind. App., 250 N. E. 2d 605, 18 Ind. Dec. 445, wherein it was held that the appellee fraternal organization was using its property for the dominant purpose of charity and was therefore exempt from tax. There it was noted that the appellee's objective charity was substantial and, further, the record in that case was without evidence of the predominant social activities exhibited by appellant herein. Indeed, charity such as will justify an exemption is more than a seal, a charter, and social activities common to all of society. There must be evidence of relief of human want, and although the re-

lief of such human want may alone be confined to the organization's membership, it must be manifested by obviously charitable acts different from the everyday purposes and activities of man in general. The record before us does not contain evidence of charitable acts such as will invoke the benefits of tax exemption."

The charitable contributions of the Appellants are in close alignment with those of the *Elks* case. We also hold, therefor, that the use of the revenues from the areas of the bar and dining room, and those areas predominantly used for bingo sessions and dances or other social activities are not of sufficient size to justify exempting those parts of Appellants' property as being charitable in the sense that their revenues produce charitable contributions of an objective nature, or reduce expenses of the Appellants' own social charity. These social activities may justify no exemption in any manner.

However, much of Appellants' property is used for fraternal and ritual purposes, and for the various performing groups to practice. It is our opinion that the touring performing groups, when performing, are acting well within the definition of charitable as mentioned in the *Elks* case quoted above. We note that many or most of these performances take place *away from the premises,* and hence it is argued that such activities may not be considered in deciding whether or not a part of Appellants' property is "dominantly used" for charitable purposes. As the performances are charitable, so are the rehearsals, practices and planning sessions. Further, the absolute necessity of a home base for traveling shows of the nature the record reveals Appellants' groups to be must be a large factor in weighing "dominant usage" of those parts of Appellants' property used by these groups.

In sum, the Appellants' are charitable organizations who have property on both sides of the dominant usage test. The ritualistic fraternal groups and the public performing groups (who perform, we note, at no fee before many and various audiences) are clearly charitable and property dominantly

used by them deserves exemption. Likewise, the Sahara Grotto Relief Club exhibits "relief from human want" and deserves exemption, as does the Sahara Grotto American Legion Post, whose activities are specifically within the exempt category by virtue of Acts 1919, ch. 59, § 5, p. 198, as amended and found as Burns' Ind. Stat. Ann. § 64-201(9). As noted above, the property parts dominantly used socially are not to be exempted.

The statute reads, "Every building, *or part thereof,* used and set apart . . ." (Emphasis supplied) and clearly necessitates the remanding of this cause to the trial court for further proceedings of a factual nature consistent with this opinion. The action of the Appellate State Board of Tax Commissioners in *wholly denying* Appellants' request for a tax exemption for the year 1965 was an arbitrary and capricious abuse of discretion.

Reversed and Remanded.

Lowdermilk, C.J.[1], Hoffman, P.J., and Pfaff, J., concur.

White, J., not participating.

NOTE.—Reported in 261 N. E. 2d 873.

---

1. Chief Justice Lowdermilk participated in this case by special designation.