**PLAINFIELD ELKS LODGE No. 2186, Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9611–TA–177.**

Tax Court of Indiana.

Aug. 2, 2000.

Brett J. Miller, Bingham Summers Welsh & Spilman, Donna Heiser Dubisky, Lewis & Kappes, P.C., Indianapolis, Indiana, Attorneys for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The petitioner, Plainfield Elks Lodge No. 2186 (the Elks) appeals the final assessment determination of the State Board of Tax Commissioners (State Board) for the 1992 tax year, denying it a property tax exemption for the 1992 tax year. In its original tax appeal, the Elks raise one issue for this Court's consideration: Whether the Elks' property meets the "charitable purpose" requirements of IND. CODE ANN. §§ 6–1.1–10–16(a) –36.3(a) (West 2000). For the reasons explained below, the Court finds that the building meets the requirements and is entitled to an exemption.

## FACTS AND PROCEDURAL HISTORY

The Elks were chartered in Plainfield, Indiana on July 6, 1960 and own property consisting of a golf course, swimming pool and lodge house in Plainfield. From 1960–1991, the Elks applied for and received a property tax exemption under IND.CODE ANN. § 6–1.1–10–16(a) based on its charitable activities.[1] In 1992, however, its application for a property tax exemption was denied. As a result, the Elks filed a petition with the Hendricks County Board of Review (BOR) on June 2, 1992. On July 27, 1992, the BOR denied the Elks' petition. Thereafter, on August 24, 1992, the Elks appealed to the State Board, which held a hearing on June 10, 1994. Subsequent to the hearing, however, the State Board failed to issue a final assessment determination within the statutory time frame; thus, the Elks deemed its petition denied under IND.CODE ANN. § 6–1.1–15–4(e) (West 2000) and on November 26, 1996, filed its original tax appeal in this Court.[2] On September 22, 1997, the Court held a trial and on February 26, 1998, oral arguments were heard from both parties. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives the State Board's decisions great deference when the Board

---

1. Previously Acts 1975, P.L. 47, SEC. 1.

2. IND.CODE ANN. § 6–1.1–15–4(e) states that if the State Board fails to issue a final determination within 180 days after the hearing, the appeal is deemed denied and the taxpayer may then file an original tax appeal in this Court.

acts within the scope of its authority. *See Bender v. State Bd. of Tax Comm'rs*, 676 N.E.2d 1113, 1114 (Ind. Tax Ct.1997). As such, final determinations by the State Board are only reversed by this Court when the decision is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See id.*

### Discussion

The Elks argue that it is entitled to a property tax exemption for the 1992 tax year, while the State Board argues that the Elks did not meet the requirements of IND.CODE ANN. §§ 6–1.1–10–16(a) and 6–1.1–10–36.3(a). Like other tax exemption statutes, these sections are strictly construed against the taxpayer. *See Trinity Episcopal Church v. State Bd. of Tax Comm'rs*, 694 N.E.2d 816, 818 (Ind. Tax Ct.1998). However, these provisions are not to be construed so narrowly that the legislature's purpose in enacting them is defeated or frustrated. *See id.* Therefore, the proper inquiry into the propriety of an exemption is whether the use of the property furthers exempt purposes. *See id.*

IND.CODE ANN. § 6–1.1–10–16(a) states that a building is exempt from property tax if it is owned, occupied and used by a person for educational, literary, scientific, religious or charitable purposes. Section 6–1.1–10–36.3(a) states that a property is predominately used during the year for one or more of the above purposes if it is used or occupied more than 50% of the time. If this test is met, then the property is entitled to an exemption in proportion to the amount of time it was used for the above-stated purposes. *See* IND.CODE ANN. § 6–1.1–10–36.3(b)(3) (West 2000). In order to receive the exemption, the Elks must prove that its property is predominately used for charitable purposes. *See* IND.CODE ANN. §§ 6–1.1–10–16(a), 6–1.1–36.3(a).

In accordance with the Elks' constitution, money was set aside for the furtherance of the charitable, educational and benevolent activities of the Elks. (Pet'r. Br. at 3.) In addition, the Elks' Articles of Incorporation state that the Elks' purpose is to promote spiritual, educational and charitable purposes. (Pet'r.Ex. 7.) As stated above, section 6–1.1–10–36.3(a) requires that a building be predominately used for charitable, educational or other philanthropic activities in order to receive an exemption. The Elks claim that the combination of both the members' and the organization's time, money and other in-kind donations is enough to meet this test. The State Board argues that the Elks' monetary contributions, as well as the organization's other donations, are not enough to qualify it for the exemption.

In analyzing this test, charity is defined in its broad constitutional sense. *See Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs*, 145 Ind.App. 522, 532–33, 251 N.E.2d 673, 679 (1969). This definition applies to the use of any property alleged to be exempt from property taxation. *See id.* The Indiana Court of Appeals has also stated that "If the property is owned and occupied by an organization to which the exemption applies, and the dominant use of the property . . . is predominately and primarily . . . charitable . . . the property is exempt from property taxation." *Id.*

At trial, the Elks' secretary, Mr. Robert J. Burroughs, admitted that the organization's property was not exclusively used for charitable endeavors. (Trial Tr. at 20–21, 31, 35.) However, Mr. Burroughs went on to testify at length about the different types of charitable events the Elks hold on their property each year. For example, the lodge dining room was donated to various organizations throughout the year such as the Rotary, Firefighters Association and the Sertoma Club of Brownsburg. (Trial Tr. at 23.)[3] These and other orga-

**3.** At trial, the Elks submitted a diary for the 1992 tax year, in which notations regarding

nizations were not charged a fee for use of the room. (Trial Tr. at 26.) Further, the dining room was often used for planning Elk-sponsored community events such as the Hoop Shoot, Young Woman of the Year show and the annual Fourth of July fireworks. (Trial Tr. at 30.)

In the case of the golf course, Mr. Burroughs testified that while the course was the main source of revenue for the Elks during the 1992 tax year, all net proceeds from the golf course were placed into the Elks' general fund, from which money was subsequently donated to various charitable causes in the community. (Trial Tr. at 31–32.) In addition, the Plainfield High School golf team was allowed unlimited free play on the course during its season. (Trial Tr. at 32.) The course also hosted various charity golf outings that benefited the Young Woman of the Year program and the Firefighters Burn Foundation, among other charitable organizations. Finally, the golf course served as the venue for the Elks' annual Fourth of July Fireworks program which Plainfield residents were invited to attend free of charge annually. (Pet'r Br. at 10.) [4]

In addition to the lodge building and golf course, the Elks also own a swimming pool. Like the golf course, the pool was open to all community members for a small fee that was used to help cover the cost of lifeguard salaries and instructors. (Trial Tr. at 35.) Among the activities held at the pool was a learn-to-swim program, where, upon payment of a $12.00 fee (used to cover the operating costs of the program), residents were entitled to swimming lessons.

The State Board argues that this is not enough to entitle the Elks to the exemp-

tion. In support of its position, the State Board cites *Indianapolis Elks Building Corporation v. State Board of Tax Commissioners*, 251 N.E.2d at 683, where the Indiana Court of Appeals held that the taxpayer did not qualify for the property tax exemption when its facility was mainly used for recreational activities. In this case, the State Board argues that the Elks' time and monetary contributions do not warrant a tax exemption because some of their activities are social in nature.[5] The State Board's approach is incorrect. The Indiana Supreme Court, in deciding whether or not to grant the property tax exemption, has analyzed an organization's time and monetary contributions together. *See State Board of Tax Commissioners v. Fraternal Order of Eagles, Lodge No. 255*, 521 N.E.2d 678, 681 (Ind.1988). In addition, this Court stated in *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Commissioners*, 550 N.E.2d 850, 854 (Ind. Tax Ct.1990), that the rationale behind the exemption is that a present benefit to the general public exists from the operation of the charitable institution sufficient to justify the loss of tax revenue.

The State Board also cites *Fraternal Order of Eagles, Lodge No. 255* for the premise that since the Elks only donated a small percentage of their income to charity, they are not entitled to the exemption. There, the Indiana Supreme Court held that where the taxpayer donated roughly 3% of its gross income to charity, it was not entitled to the exemption. See *Fraternal Order of Eagles Lodge, No. 255*, 521 N.E.2d at 678. *See also Indianapolis Elks Bldg. Corp.*, 251 N.E.2d at 683 (taxpayer's contributions were not enough to warrant an exemption.) In this case, how-

---

the use of the lodge building by various Plainfield charities were recorded. (Pet'r Ex. 10.) Such evidence supports the contention that the Elks used their property predominately for charitable purposes.

4. This display was underwritten entirely by the Elks as a service to the community. (Trial Tr. at 41.)

5. The Elks donated roughly $16,000 to Plainfield charities during the 1992 tax year. (Pet'r Ex. 9)(Resp't. Br. at 4).

ever, the testimony and evidence revealed a much larger contribution by the Elks.[6]

The State Board further argues that since the Elks made some profit on the operation of the golf course, it is not entitled to the exemption. As stated above, the net proceeds from the golf course were donated back to the community in various forms. Even if the Elks had kept some of the proceeds for themselves, the Indiana Supreme Court has stated that an organization may make a small profit, yet still retain its exempt status. *See State Board of Tax Commissioners v. Indianapolis Lodge # 17, Loyal Order of Moose, Inc.,* 245 Ind. 614, 622, 200 N.E.2d 221, 225 (1964) (Holding that the taxpayer was still entitled to the exemption, despite a small profit made from its dining room). The Court finds that when combined with the monetary donations, the Elks property was predominately, but not solely used for charitable purposes under IND.CODE ANN. § 6–1.1–10–36.3(a). The State Board abused its discretion by failing to grant the Elks a property tax exemption. The Elks are entitled to an exemption for the 1992 tax year pursuant to IND.CODE ANN. § 6–1.1–10–36.3(b)(3).

## CONCLUSION

For the reasons stated above, the Court REVERSES the final determination of the State Board, denying the Elks a property tax exemption for the 1992 tax year. This case is REMANDED with instructions to conduct further proceedings to determine the exemption allowed by IND.CODE ANN. § 6–1.1–10–36.3(b)(3) for the 1992 tax year.

---

**6.** This is not to infer, however, that the determination of an organization's exempt status turns on the percentage of its gross income used for charitable, educational or other benevolent purposes. The statute clearly states that a building's exempt status turns on whether its property is used for the above-mentioned purposes the majority of the time.

*See* IND.CODE ANN. § 6–1.1–10–36.3(a). While the State Board invites this Court to establish a bright-line test based on an organization's percentage of charitable giving, the Court respectfully declines such an invitation and points out that neither the legislature nor the State Board has adopted such a test.