WILSON ET AL. *v.* DEXTER, EXECUTOR, ETC. ET AL.

[No. 19,639. Filed September 18, 1963. Rehearing dismissed October 22, 1963.]

*Stevens & Wampler,* of Plymouth, for appellants.

*Kenner, Gordon & Glenn, William S. Gordon* and *Robert R. Glenn,* all of Huntington, for appellees.

HUNTER, J.—This case involves a dispute between the devisees and beneficiaries under a will of Mrs. Carrie Rist and the Methodist Memorial Home (hereinafter referred to as "Home"), involving certain intangibles that Mrs. Rist had given the Home pursuant to a contract in which she agreed to turn over most of her property in return for lifetime care in an apartment at

the Innis Building at the Home. Mrs. Rist lived only forty-two (42) days after entering the Home and was in the Home's hospital the entire time. The trial court, by special findings, found that the decedent entered the Home and the Home performed all its obligations under the contract. The appellants do not directly refute or question the findings of the trial court and there was ample evidence of probative value to sustain the court's findings.

Appellants on appeal attempt to present questions of whether there was a confidential relationship existing between the parties or undue influence exerted by the Home. These questions were not part of appellants' theory in the lower court and it is well established that appellants cannot bring a new theory of their cause of action for the first time in this court. *Midwest Oil Company* v. *Storey* (1961), 134 Ind. App. 137, 178 N. E. 2d 468; *Chambers et al.* v. *Boatright et al.* (1961), 132 Ind. App. 378, 177 N. E. 2d 600; 3 West's Indiana Digest, *Appeal & Error*, §171 (1), page 547; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2784, 1961 Supp.

The only questions appellants have properly pursued are:

(1) Decision not sustained by sufficient evidence

(2) Decision is contrary to law

(3) Court erred in overruling motion for judgment on the pleadings

(4) Court erred in admission of certain evidence

(5) Court erred in overruling motion to modify judgment.

Appellants' major contention is "that the basic consideration of the contract failed." It is argued that the

contract provided for a room in the Innis Building, and that the decedent never received the same. However, the undisputed evidence shows that said appellee had prepared a room in this building for the decedent and it remained available for her use during the period of her residence in the appellee "Home." However, the decedent was physically unable to occupy this room and was confined to a bed in the Home's hospital wing. Thus, it appears that the appellee "Home" had performed its obligations under the contract, and since the question revolves around "contract consideration," and not "quantum merit," we are concerned primarily with the performance of said appellee, and not the benefits received by it. *Forester* v. *Forester* (1894), 10 Ind. App. 680, 38 N. E. 426; *Davis* v. *Chase* (1902), 159 Ind. 242, 64 N. E. 88; *Indianapolis Real Estate Board* v. *Willson* (1933), 98 Ind. App. 72, 187 N. E. 400.

It is also urged that even though the appellee "Home" performed all it could under the circumstances, the performance of not over $1,000.00 worth of goods and services is not an adequate consideration for the over $20,000.00 it received from the decedent. It is true that the appellee "Home" received substantially more from this contract than it gave, nevertheless, the consideration that the Home was contractually obligated to give in service by way of life care was an indeterminable amount that conceivably could have ranged from that which was actually given to an amount much in excess of the $20,000.00 received by the Home. Therefore, it seems that appellee in accepting the deceased into its Home, providing those services as enumerated by the contract, and *standing ready to continue to perform those services for the remainder of decedent's life,* had adequately performed its part of the contract and was

entitled to full performance under the contract. In *Mullen* v. *Hawkins* (1895), 141 Ind. 363, 40 N. E. 797 quoting from *Hardesty* v. *Smith* (1851), 3 Ind. 39, we find the following language: "The consideration agreed upon may indefinitely exceed the value of the thing for which it is promised and still the bargain stand. The doing of an act by one at the request of another, which may be a detriment or inconvenience, however slight, to the party doing it, or may be a benefit, however slight, to the party at whose request it is performed, is a legal consideration for a promise by such requesting party." See also *Wolford* v. *Powers, Administratrix* (1882), 85 Ind. 294.

It has long been the law in this state that where the parties have agreed upon a consideration that is of indeterminable value, the court will not substitute its judgment as to the adequacy of such agreed consideration for that of the parties; but the court will uphold the contract. *Kernodle* v. *Hunt*, 4 Blackford 57; *Hardesty* v. *Smith, supra; Taylor* v. *Huff* (1856), 7 Ind. 680; *Baker* v. *Roberts* (1860), 14 Ind. 552; *Wolford* v. *Powers, Administratrix, supra; Shade* v. *Creviston et al.* (1884), 93 Ind. 591; *Long et al.* v. *The State* (1884), 95 Ind. 481; *Johnson et al.* v. *Gwinn et al.* (1885), 100 Ind. 466; *Adams et al.* v. *Vanderbeck et al.* (1896), 148 Ind. 92, 45 N. E. 645; *Price, Administrator et al.* v. *Jones* (1886), 105 Ind. 543, 5 N. E. 683; *Colt et al. Executors* v. *McConnell et al.* (1888), 116 Ind. 249, 19 N. E. 106; *Polk* v. *Johnson* (1903), 160 Ind. 292, 66 N. E. 752; *First Nat. Bank* v. *Farmers, etc., Bank* (1908), 171 Ind. 323, 86 N. E. 417; *Ditmar, Guardian of West* v. *West* (1893), 7 Ind. App. 637, 35 N. E. 47; *Trackwell, Admr.* v. *Irvin* (1917), 66 Ind. App. 5, 115 N. E. 807. Viewed from this standpoint alone, the fact that due to the early

death of the decedent, the appellee "Home" was required to perform the contract for only a short period of time will not necessarily bar relief, for that must have been a contingency the parties had in mind when they entered into the contract, and the fact that they did not contract against it is significant. "At the time the contract was made it could not have been foreseen which party would profit the most by it. The promisor (decedent) might have lived until her estate was exhausted in her support, or otherwise dissipated. Each party assumed the loss or gain by contingencies, and each was willing to do so." *Howe* v. *Watson* (1901), 179 Mass. 30, 60 N. E. 415. For discussion of this case see annotation in 49 A. L. R. 601. In other words, contracts of this type may not be viewed from hindsight. The circumstances surrounding the parties at the time of the execution of this type of contract should be all controlling. *Howe* v. *Watson, supra*. See also cases and discussions thereof cited in 49 A. L. R. 601, *et seq*. The earliest case in Indiana involving the question of life care re the enforceability of such a contract is *Watson et al.* v. *Mahan et al.* (1863), 20 Ind. 223.[1]

Admittedly, the contract, in part, possibly may be questioned as a testamentary disposition of certain personal property. However, the appellants failed to question its validity for any reason at any time in the trial court and in fact *admitted the execution thereof*. Therefore, the validity of the contract stands before us unchallenged and we will not search the record to find cause for reversal. *Martin, Sr.* v. *Martin et ux.* (1881), 74 Ind. 207, 210; *Ross* v. *Clore* (1947), 117 Ind. App. 548, 549, 74 N. E. 2d 747; *Albertson* v. *Nix* (1944), 115 Ind. App. 128, 57 N. E.

1. See also cases discussed in 10 A. L. R. 2d 864, Supp. Serv.

2d 206. This court cannot be thus placed in the position of striking down a contract of this type on the mere ground that the decedent did not live long enough to obtain the maximum benefits under the contract. *Watson et al.* v. *Mahan et al., supra; Howe* v. *Watson, supra; Woods* v. *Dunn* (1916), 81 Or. 457, 159 P. 1158; *Muir* v. *Bartlett* (1915), 78 N. H. 313, 99 A. 553.

Appellants contend that a constructive trust should be placed upon the proceeds of the various bonds. However, since we have determined that we have no question of the validity of the contract properly presented to us and we have further found the consideration to be adequate, this contention too must fail. Such contention is not supported by evidentiary establishment of the elements requisite for the raising of a constructive trust. Thus, since the evidence substantially shows that the contract existed, that its terms were faithfully carried out by the parties during the lifetime of the decedent, and that each of the parties relied upon the conditions thereof, as written, it follows that the trial court's decision was not contrary to law.

The appellants also urge the applicability of the theory of "unjust enrichment" for the first time on this appeal. As stated hereinbefore, their action in the trial court proceeded on the theory of failure of consideration of the contract by reason of the asserted fact that the decedent did not actually and physically occupy an apartment room in the Innis building of the appellee "Home." Hence, there is serious doubt as to whether the question of the theory of "unjust enrichment" is properly before this court. However, as we have indicated herein, there was no failure of consideration, this contention, also, must fail, and therefore we do not hold that the trial court's decision is contrary to law by reason of such theory.

The appellants' motion for judgment on the pleadings stating the theory that the pleading on its face showed a failure of consideration was not proper where an issue was made for submission to the trial court and therefore was properly denied.

The court properly overruled appellants' motion to modify the judgment as this type of motion must be addressed to the form or substance, and not to the validity, of the judgment. *Stone* v. *Stone* (1902), 158 Ind. 628, 64 N. E. 86. Appellants' motion was directed to the validity thereof and, therefore, was properly overruled.

Appellants' remaining contention is that the trial court erred in overruling their objections to the admission of certain evidence. The testimony objected to involved (1) the decedent's mental well being while at the appellee "Home's" hospital, and (2) testimony concerning the decedent's request to be taken to the appellee "Home" which request was relayed to the Home via telephone by the decedent's minister. A close review of the evidence fails to show how the appellants sustained any prejudicial harm and this court will not reverse for error in the admission of evidence unless there is a showing that the appellants were prejudiced thereby. The appellants have wholly failed to point out wherein they were prejudicially harmed by the admission of the evidence complained of, under the theory of the case as submitted to the trial court. *American Employers' Ins. Co.* v. *Cornell* (1948), 225 Ind. 559, 76 N. E. 2d 562; *Perkins* v. *Sullivan* (1957), 127 Ind. App. 426, 143 N. E. 2d 105. Having failed to establish reversible error on the record in this regard, the appellants must wholly fail in this contention. *Perkins* v. *Sullivan, supra; Martin, Sr.* v. *Martin et ux., supra.*

Courts almost unanimously look with favor upon contracts of this nature. Distastefully speaking, the appellee "Home" and the decedent each took a chance, and in this instance, the decedent, unfortunately, did not live long enough to enjoy the apparently expected long time care at the appellee "Home," as she probably would have if Providence had decreed a longer life for her. Therefore, in this instance, it may be said that the Home, in a material sense, was successful on its chance. However, the suggestion of the spirit of gamble seems in bad taste and unfair, for it appears that the Home is instituted in the fulfillment of pure charity for the aged homeless, supported in main by benevolent contributions and unselfishly served by kind, generous, and dedicated men and women. The defense of public policy, in the circumstances, is an unwarranted intrusion. In our times, an all too rarely expounded policy of preparing individually to provide for one's security in the autumn of life and thereby not be pauperized and become a public charge, is a policy that conversely urges that charitable institutions which tend to save the public of such charges ought to be encouraged, in the absence of a properly established legal or equitable impropriety. *Dodge* v. *New Hampshire Cent. Home* (1949), 95 N. H. 472, 67 A. 2d 10.[2]

---

2. *Nicolaysen v. Pacific Home* (1944), 65 Cal. App. 2d 769, 151 P. 2d 567; *The Sisters of the Third Order of St. Francis v. Estate of Frances Guillaume* (1921), 222 Ill. App. 543; *Hornstrom v. Beverly State Savings Bank of Chicago* (1940), 304 Ill. App. 574, 26 N. E. 2d 687; *The Maccabees v. Harry C. Stone et al.*, (1940), 306 Ill. 468, 28 N. E. 2d 738; *Stoddard v. Gabriel* (1944), 234 Iowa 1366, 14 N. W. 2d 737; *Jernberg v. Evangelical Lutheran Bethany Home for the Aged* (1942), 156 Kan. 167, 131 P. 2d 691; *The General German Aged People's Home of Baltimore City v. Hammerbacker et al.* (1885), 64 Md. 595, 3 A. 678; *In re Heim's Estate* (1938), 255 App. Div. 1007, 8 N. Y. S. 2d 574. For further references to similar holdings on the same issue from other jurisdictions and a discussion of those cases, see 10 A. L. R. 2d §864, 1959 and 1963 Supp. Serv.

No reversible error having been presented to this court, the judgment must be sustained.

Affirmed.

Mote, C. J., Kelley and Pfaff, JJ., concur.

NOTE.—Reported in 192 N. E. 2d 469.