STATE BD. OF TAX COMM. ET AL.
*v.* METHODIST HOME FOR THE AGED
OF THE IND. CONFERENCE OF THE METHODIST CHURCH, INC.

[No. 20,763. Filed October 17, 1968. Rehearing denied November 26, 1968. Transfer denied February 11, 1969.]

*John J. Dillon,* Attorney General, and *Lloyd C. Hutchinson* and *James B. Droege,* Deputies Attorney General, and *James B. Young,* County Attorney of Johnson County, of Franklin, for appellants.

*Barney and Hughes,* of Indianapolis, and *LaGrange and Fredbeck,* of Franklin, for appellees.

PFAFF, J.—This is an appeal by the State Board of Tax Commissioners, and others, from a judgment of the Johnson Circuit Court setting aside the order of the State Board of Tax Commissioners denying the appellee, the owner and operator of the Methodist Home for the Aged in Franklin, Indiana, a one hundred percent tax exemption under the property tax exemption laws of the State of Indiana. The appellant Board had granted a partial exemption, but on appeal to the Johnson Circuit Court, that court held that the appellee's retirement home was entitled to a one hundred percent exemption from property taxes.

The trial court made special findings of fact and conclusions of law pursuant to Rule 1-7(c) of the Rules of the Supreme Court of Indiana, and the appellant Board attacks certain of these findings of fact along with the conclusions of law in its motion for new trial and on this appeal. Since, in our view of this case, the findings of fact in dispute are not controlling, we need not decide those issues nor set out the findings in their entirety.

The undisputed evidence establishes that the appellee is a non-profit organization, organized and existing under the laws of the State of Indiana, and maintains on the property in question a retirement home for the aged. The home was constructed upon a 40-acre track of land received as a joint

gift from the Grace Methodist Church of Franklin, Indiana, and the Franklin Chamber of Commerce. Approximately one-half of the cost of the first unit of the home was furnished by the 600 member churches of the Indiana Conference of the Methodist Church. As of March 1, 1964, the home consisted of a three-story building with a central structure and a West wing containing separate dwelling units for single persons and married couples, administrative offices, and central dining, recreational, craft and medical facilities, capable of housing about 180 residents. In addition, there existed on appellee's real estate approximately 15 cottages occupied by personnel or aged residents of the home. On March 1, 1964, the home had approximately 166 residents with an average age of 80.9 years. The home is non-sectarian and its residents, as of the effective assessment date, represented eight religious denominations. The majority of the persons entering the home acquire the right to occupy an apartment upon the making of an average payment in the sum of $9,500.00. Approximately twenty-five percent of the residents make no such contribution. This amount is refundable on a sliding scale if the resident moves out within five years. If the resident remains more than five years, none of such amount is refundable. In addition thereto, the residents, to the extent that they are financially able, pay a monthly charge for their care, including their meals. The home maintains a medical annex and health center staffed with trained medical and nursing personnel, where at any given time as many as twenty percent of the home's residents receive good care below cost. All of the income and receipts of the appellee, including gifts and bequests, are devoted, after the payment of expenses, to the purposes of the appellee in maintaining the home for aged and infirm. All of the appellee's real estate and all of the improvements located thereon were, on March 1, 1964, set aside by the appellee exclusively for the operation of its home for the aged and infirm. No person, firm or corporation derives any profit from the appellee's operation of its home. The home is meeting the needs which gerontologists

state must be provided the aging, namely: relief of loneliness, boredom, decent housing that has safety and convenience and is adapted to their age, security, well-being, emotional stability, attention to problems of health, etc.

The appellants contend that a retirement home such as that owned and operated by the appellee is only charitable to the extent that it cares for the indigent and that to the extent it cares for those who are able to pay, it is not charitable.

Article 10, § 1, of the Constitution of Indiana, at the time in question, provided as follows:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specifically exempted by law."

This Article has been amended. However, these amendments in no way affect the issues to be decided in this case.

Acting under the above constitutional provision, the General Assembly has enacted laws granting exemptions in certain instances. Among these exemptions are those set out in the Fifth Clause of § 64-201, Burns' Ind. Stat. Anno. (1961 Repl.), which reads as follows:

"Fifth. Every building, or part thereof, used and set apart for educational, literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or incorporation, provided the same is owned and actually occupied by the institution, individual, association or incorporation using it for such purpose or purposes, and every building owned and occupied, used and set apart for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any education[al] institution not exceeding fifty

(50) acres; also the lands purchased with the bona fide intention of erecting buildings for such use thereon, not exceeding forty (40) acres; also the personal property endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid."

In *Stark v. Kreyling* (1934), 207 Ind. 128, 188 N. E. 680, the Supreme Court of Indiana, said at pages 132 and 133:

"No class of property is exempt from taxation unless it is 'specially exempted by law;' and only property used for 'municipal, education, literary, scientific or charitable purposes' can be specially exempted by law. (Art. X, Sec. 1, Indiana Constitution). And although the General Assembly, by appropriate legislative enactment may specially exempt a class of property, subject to constitutional limitations, it can not confer upon any particular piece of property an indelible imprint of nontaxability; and when the facts which bring a particular item of property within an exempted class cease to exist, the particular piece of property necessarily loses its exemption character. The foregoing is recognized by § 6 of the 1919 tax law (Acts 1919, ch. 59, etc. § 14038, Burns' 1926, § 64-203, Burns' 1933, § 15523, Bladwin's 1934) which is merely a legislative declaration of the impotency of the General Assembly to specially exempt from taxation any property which is not devoted to a municipal, educational, literary, scientific, or charitable purpose."

Thus, it becomes apparent that the General Assembly, in enacting the Fifth Clause in § 64-201, *supra,* was attempting to exercise its constitutional powers to the fullest extent in granting an exemption to all real estate and improvements thereon used and set apart for educational, literary, scientific, religious or charitable purposes as those terms are used in Article 10, § 1, of the Constitution of Indiana. Thus, in determining whether the appellee's property was used and set apart for charitable purposes, we are dealing with the word "charitable" in its broad constitutional sense. For this reason, cases from other jurisdictions construing language in specific exemption statutes

are not directly in point, nor are cases construing the constitutional provisions for exemptions, unless the language used in the other constitutions is substantially similar to that used in our Constitution.

The principal cases from other jurisdictions denying tax exemption to non-profit retirement homes are *Friendsview Manor v. State Tax Commission* (Or. 1966), 420 P. 2d 77, and *Haines v. St. Petersburg Methodist Home, Inc.* (Fla. 1965), 173 So. 2d 176. Each of these cases involved the question of whether or not the Legislature intended to include non-profit retirement homes in the exemption statute involved, and in neither of these cases had the Legislature adopted the broadest possible interpretation under its constitution. In fact, in the Oregon decision, the court recognized that Friendsview Manor was a charity and that its property was being placed to a charitable purpose, but found that it was not within the exemption statute. The Florida case was immediately considered by the Florida Legislature when, after the decision in the *Haines* case, the Legislature amended its exemption statute to include retirement homes.

In the case of *County of Douglas v. OEA Senior Citizens, Inc.* (1961), 172 Neb. 696, 111 N. W. 2d 719, the court denied a property tax exemption to a non-profit retirement home, similar to the appellee's home in the instant case, on constitutional grounds. However, that case is not here in point since the Nebraska Constitution is more restrictive than the Indiana Constitution in that it does not use the word "charitable" in its broad sense, but is limited by the word "exclusively" so that the Legislature only has the authority to grant exemption to such uses as may be "exclusively charitable".

Contrary to these decisions denying the exemptions are the great majority of cases granting exemptions by holding that such homes are "charitable" when that word is used in its broad legal sense.

A case most similar to the present one is *Bozeman Deaconess Foundation v. Ford* (Mont. 1968), 439 P. 2d 915. In that case the court, in considering whether or not a home, operated in the same manner as the appellee's home in the instant case, was a "charitable" institution within the meaning of that word as used in the Montana Constitution, stated at page 917:

> "To qualify as a charity does not require that it have an exclusive relationship to the poor, and its charitable status is not destroyed by the charging of fees for admission and maintenance. The case of *Fredericka Home for The Aged v. San Diego County*, 35 Cal. 2d 789, 221 P. 2d 68, summarizes the modern view on these points:
>
>> 'The concept of charity is not confined to the relief of the needy and destitute, for "aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants". [Citing case.] So the charge of fees by such an institution as a home for the aged will not necessarily prevent its classification as charitable if such sums "go to pay the expenses of operation and not to the profit of the founders or shareholders", for all persons may "under certain conditions be proper objects of charity." [Citing cases]' "

See also: *In re Claim of Assembly Homes v. Yellow Medicine Co.* (1966), 273 Minn. 197, 140 N. W. 2d 336; *City of Richmond v. Hospital* (1960), 202 Va. 86, 116 S. E. 2d 79; *Topeka Presbyterian Manor v. Board of County Commissioners* (1965), 195 Kan. 90, 402 P.2d 802.

While there are no Indiana cases directly in point, the Supreme Court of Indiana has recognized the broad interpretation that is to be given the word "charitable" under our Constitution and our exemption statutes. In the case of *City of Indianapolis v. The Grand Master, etc., of the Grand Lodge of Indiana* (1865), 25 Ind. 518, it was held that a Masonic order was a charitable institution. The court said at page 522:

"The third paragraph of the answer presents the question whether that is a charitable institution, in the sense of the statute, which confines its benefactions to those who have become members of the Masonic order, having paid the fees commonly required for that purpose? We think that this question must be answered in the affirmative. It is not essential to charity that it shall be universal. That an institution limits the dispensation of its blessings to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization, does not, we think, deprive it either in legal or popular apprehension of the character of a charitable institution. If that only be charity which relieves human want, without discriminating amongst those who need relief, then indeed it is a rarer virtue than has been supposed. And if one organization may confine itself to a sex, or church, or city, why not to a given confraternity? So narrow a definition of charity as the third paragraph presupposes is not, that we are aware of, ever attached to it, and we are not at liberty to circumscribe the effect of the statute, and defeat its intention, by affixing to its terms an unusually limited meaning."

Following this broad interpretation adopted by our Supreme Court, the Attorney General, in 1921, in response to a question from the Chairman of the State Board of Tax Commissioners, advised that retirement homes such as the appellee's herein are exempt under the Indiana Statute. In this opinion he said:

"* * * Institutions of this nature are generally held to be exempt from taxation as being used for charitable purposes, and it has been held that the fact that fees are charged for the use of the privileges of the institution does not itself decide that the institution is not charitable when it does not appear that the fees are more than sufficient to pay the expenses of maintenance or that the proprietors of the institution derive any profit therefrom."

Opinions of the Attorney General (1921), p. 438.

We recognize the fact that our courts are not bound by official opinions of the Attorney General. However, we feel

that the language used in the above 1921 opinion is applicable to the facts and issues presented in the case at bar.

The acquiescence of the General Assembly for the last forty-five years in the broad construction of the exemption statute with respect to retirement homes is evidence that the General Assembly intends that the word "charitable" in the exemption statute should be construed to include non-profit retirement homes such as the appellee's in the instant case. *State Board of Tax Commissioners v. Wright* (1966), 139 Ind. App. 370, 215 N. E. 2d 57.

In the case of *Wilson v. Dexter, Executor* (1963), 135 Ind. App. 247, 256, 192 N. E. 2d 469, beneficiaries under the will of a decedent sought to recover certain assets turned over to the Methodist Memorial Home at Warren, Indiana, by the decedent under a life care contract. The decedent died forty-two days after entering the home. In describing the home, Judge Hunter said:

"* * * [T]he Home is instituted in the fulfillment of pure charity for the aged homeless, supported in main by benevolent contributions and unselfishly served by kind, generous and dedicated men and women. * * * In our times, an all too rarely expounded policy of preparing individually to provide for one's security in the autumn of life and thereby not be pauperized and become a public charge, is a policy that conversely urges that charitable institutions which tend to save the public of such charges ought to be encouraged, in the absence of a properly established legal or equitable impropriety."

The Restatement of the Law of Trusts defines a charitable purpose as follows:

"A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity.

"There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place. * * *."

Restatement, *Trusts*, Vol. 2, § 368(b), p. 1141, (1935).

It should be noted that Federal income tax relief is also granted to income derived from homes operated for the purpose of providing care and comfort for the aged. In the case of *The Salem Lutheran Home Ass'n. of the Bay Cities*, 2 CCH Tax Ct. Mem. 157, 159 (1943), it is stated:

"* * * In other words, is the operation of a home for the care and comfort of aged persons, without profit to any individual and from purely religious or philanthropic motives, a charity within the intendment of the statute? We think that it is. * * *.

"* * * It does not operate for the benefit of any select group of individuals or institutions. The fact that it is necessary for petitioner to charge a substantial admission fee in order to carry on its work does not deprive it of the status of a tax exempt corporation."

It is now common knowledge that the aged require care and attention entirely independent of financial needs, and that present day humanitarian principles demand that those in their declining years have the opportunity to live with as much independence as their strength will permit, in as pleasant and happy surroundings as their finances will reasonably justify.

The Indiana exemption statute exempts all property used and set apart for charitable purposes. The General Assembly in that statute used the word "charitable" in the broad sense in which it is used in Article 10, § 1, of our Indiana Constitution. The Attorney General of Indiana in 1921 publicly construed nonprofit retirement homes as being within the word "charitable" as used in the exemption statute, and the General Assembly has since that time acquiesed in that construction. This court, in *Wilson v. Dexter, Executor, supra*, recognized such homes as "charitable" as that word is used

in its broad sense. The courts of other states have recognized such homes as "charitable" in such a broad sense even when they have denied exemptions because the exemption statute was not that broad.

In light of the broad construction that has historically been accorded the word "charitable" in Article 10, § 1, of the Constitution of Indiana, and in light of the trial courts' findings of the public need for such institutions, the trial court in the instant case could reach no other result but that appellee was entitled to a total exemption.

No reversible error having been presented to this court, the judgment of the Johnson Circuit Court must be affirmed.

Judgment affirmed.

Carson, C. J., Cook, P. J., and Bierly, Cooper and Smith, JJ., concur.

Faulconer and Prime, JJ., not participating.

NOTE.—Reported in 241 N. E. 2d 84.