## KNOX COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS, Petitioner,

v.

## GRANDVIEW CARE, INC., Respondent.

### No. 49T10–0403–TA–15.

Tax Court of Indiana.

April 29, 2005.

---

Rhonda S. Miller, Bruce A. Smith, Sturm, Smith & Parmenter, Vincennes, IN, Attorneys for Petitioner.

Barton T. Sprunger, Katrina M. Clingerman, Ice Miller, Indianapolis, IN, Attorneys for Respondent.

**FISHER, J.**

The Knox County Property Tax Assessment Board of Appeals (PTABOA) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) granting Grandview Care, Inc. (Grandview) a property tax exemption for the 2002 tax year (the year at issue). The sole question before the Court is whether Grandview's nursing home and assisted living facility, known as the BridgePointe Health Campus (BridgePointe), qualifies for the charitable purposes exemption as provided in Indiana Code § 6–1.1–10–16.

## FACTS AND PROCEDURAL HISTORY

Grandview is an Indiana not-for-profit corporation.[1] It owns BridgePointe, a nursing home and assisted living facility in Vincennes, Indiana. BridgePointe provides various levels of care for its approximately 98 residents, ranging from short-term/transitional (with the intent on returning the patient to his/her home) to long-term/skilled.[2] While BridgePointe

---

1. Grandview has also been recognized by the Internal Revenue Service as a 501(c)(3) organization. Accordingly, Grandview is exempt from federal income taxation.

2. BridgePointe residents must be at least 55 years old and/or mentally or physically disabled.

residents are charged a monthly fee to cover the costs of their living quarters, meals, laundry, and medical services, BridgePointe will not turn a resident away due to an inability to pay the monthly fee.

During the year at issue, Grandview contracted with Trilogy Health Services, LLC (Trilogy), a for-profit organization, to operate BridgePointe. For a monthly fee of $17,000, Trilogy was not only responsible for operating BridgePointe, but for maintaining its buildings, hiring (and firing) its employees, and ensuring compliance with all licensing and regulatory requirements as well. Trilogy was also responsible for paying all of BridgePointe's operating expenses, including payroll.[3]

On May 14, 2002, Grandview filed a Form 136 Application for Property Tax Exemption (Form 136) for the year at issue with the Knox County Auditor. In its Form 136, Grandview claimed that BridgePointe was entitled to the charitable purposes exemption because it provided "decent housing with safety and security, a sense of community, and attention to [the] emotional stability and physical wellness" of the elderly and needy in Knox County, Indiana. (Cert. Admin. R. at 117, 122.) On July 24, 2003, the PTABOA denied the application, stating that due to Grandview's contract with Trilogy, "the facility is being operated as a for-profit entity. We are [therefore] unable to relate Grandview ... as being charitable[.]" (Cert. Admin. R. at 11.)

Grandview appealed the PTABOA's determination to the Indiana Board. After conducting an administrative hearing on the matter, the Indiana Board issued a final determination on February 12, 2004, in which it reversed the PTABOA. Specifically, the Indiana Board held that

[w]hether Grandview manages the facility itself, or contracts with a management company, the purpose of the property is the operation of a nursing home and assisted living facility to provide housing and care for the elderly.

[Grandview] owns, occupies and uses the property to provide housing and care for the elderly. The Tax Court has [previously] stated that a charitable purpose is accomplished by meeting the needs of the aging.

(Cert. Admin. R. at 55.)

On March 23, 2004, the PTABOA filed an original tax appeal. Both the PTABOA and Grandview subsequently agreed to have the case resolved on the basis of the administrative record and their briefs. The Court heard the parties' oral arguments on February 18, 2005. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Village Prop. Co., LLP v. Indiana Bd. of Tax Review*, 779 N.E.2d 986, 988 (Ind.Tax Ct.2002). Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

---

3. While Trilogy was responsible for issuing all checks, it was merely an authorized signatory to Grandview's bank account. In other words, Grandview paid all of BridgePointe's operating and payroll expenses.

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2005).

 The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *See Osolo Township Assessor v. Elkhart Maple Lane Assocs. L.P.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). In order to meet that burden, the party seeking reversal must have submitted, during the administrative hearing process, probative evidence regarding the alleged assessment error. *Id.* (footnote omitted). Probative evidence is evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Id.* at n. 4.

## DISCUSSION AND ANALYSIS

Article 10, § 1 of the Indiana Constitution provides:

> The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal. The General Assembly may exempt from property taxation any property ... being used for municipal, educational, literary, scientific, religious, or charitable purposes.

IND. CONST. art. X, § 1(a)(1). Acting pursuant to this grant of authority, the legislature has enacted Indiana Code § 6–1.1–10–16, which provides that "[a]ll or part of a building is exempt from property taxation if it is owned, occupied, and used [ ] for educational, literary, scientific, religious or charitable purposes." *See* IND.CODE ANN. § 6–1.1–10–16(a) (West 2005). This exemption also generally extends to the land on which the exempt building is situated, as

well as personal property that is contained therein. *See* A.I.C. § 6–1.1–10–16(c), (e).

The PTABOA claims that the Indiana Board's determination that a charitable purpose exists in this case is erroneous for three reasons. First, it argues that because Grandview is not affiliated with any religious organization, there is "the lack of an identifiable charity." (Pet'r Br. at 4–5.) Second, it claims that while Grandview may own BridgePointe, it does not "occupy" or "use" it, as required by the exemption statute. (Pet'r Br. at 6.) Finally, the PTABOA argues that the evidence indicates that Grandview and Trilogy are clearly in business to generate a profit, which contradicts the existence of a charitable purpose. (*See* Pet'r Br. at 9–10.) The Court will address each of these arguments in turn.

### 1. "The Lack of an Identifiable Charity"

 In essence, the PTABOA argues that because Grandview is not a religious organization, it cannot be a charity, and because it is not a charity, it cannot have a charitable purpose. The Court disagrees.

As early as 1879, the Indiana Supreme Court explained that a property's exempt status was tied to its use, and not to its owner. Indeed, as the Supreme Court explained, Article X, § 1 of the Indiana Constitution clearly "contemplates the character and purpose of the property that may be exempted from taxation, not the character and purpose of the owner of the property." *State ex rel. Tieman v. City of Indianapolis*, 69 Ind. 375, 376 (1879). This Court has repeatedly recognized that principle in its own jurisprudence. *See, e.g., Indianapolis Osteopathic Hosp., Inc. v. Dep't of Local Gov't Fin.*, 818 N.E.2d 1009, 1015–19 (Ind.Tax Ct.2004) (applying a "predominant use test" to determine whether property was exempt from taxation); *Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 959

(Ind.Tax Ct.1997) (stating that "a property's exempt status is tied to its use"); *Lincoln Hills Dev. Corp. v. State Bd. of Tax Comm'rs*, 521 N.E.2d 1360, 1361 (Ind. Tax Ct.1988) (holding that a corporation's not-for-profit status did not automatically qualify it for an exemption under Indiana Code § 6–1.1–10–16; rather, the corporation had to show that the property was used for one of the listed purposes found in the statute). Accordingly, Bridge-Pointe's entitlement to the charitable purposes exemption is not dependent on Grandview's status as a religious organization. Rather, the relevant question is whether BridgePointe is owned, occupied, and used for a charitable purpose.

 The term "charitable purpose" is to be defined and understood in its broadest, constitutional sense. *Indianapolis Elks Bldg. Corp. v. State Bd. of Tax Comm'rs*, 145 Ind.App. 522, 251 N.E.2d 673, 682 (1969). Consequently, a charitable purpose will generally be found to exist if: 1) there is "evidence of relief of human want ... manifested by obviously charitable acts different from the everyday purposes and activities of man in general"; and 2) there is an expectation of a benefit that will inure to the public by the accomplishment of such acts.[4] *See id.* at 683; *State Bd. of Tax Comm'rs v. Methodist Home for the Aged*, 143 Ind.App. 419, 241 N.E.2d 84, 89 (1968) (footnote added).

To that end, Indiana courts have long recognized that providing care and comfort to the aged constitutes a charitable pur-

pose. *See Wittenberg Lutheran Village Endowment Corp. v. Lake County Property Tax Assessment Bd. of Appeals*, 782 N.E.2d 483 (Ind.Tax Ct.2003); *Raintree Friends Housing, Inc. v. Indiana Dep't of State Revenue*, 667 N.E.2d 810 (Ind.Tax Ct.1996); *Methodist Home for the Aged*, 143 Ind.App. 419, 241 N.E.2d 84; *Wilson v. Dexter*, 135 Ind.App. 247, 192 N.E.2d 469, 474 (1963). Indeed, as this Court once explained:

> Caring for the aged is a recognized benefit to the community at large and society as a whole. Indiana law recognizes that the aged require care and attention entirely independent of financial needs, and that present day humanitarian principles demand that those in their declining years have the opportunity to live with as much independence as their strength will permit, in as pleasant and happy surroundings as their finances will reasonably justify. Thus, by meeting the needs of the aging, namely, relief of loneliness and boredom, decent housing that has safety and convenience and is adapted to their age, security, well-being, emotional stability, and attention to problems of health, a charitable purpose is accomplished.

*Raintree Friends Housing, Inc.*, 667 N.E.2d at 814–15 (internal citations and punctuation omitted). The facts in this case clearly demonstrate that Bridge-Pointe's provision of comfort and care to the elderly accomplishes a charitable purpose.[5]

---

4. Indeed, "[t]he rationale justifying a [charitable purposes] tax exemption is that there is a present benefit to the general public from the operation of the charitable institution sufficient to justify the loss of tax revenue." *Foursquare Tabernacle Church of God in Christ v. State Bd. of Tax Comm'rs*, 550 N.E.2d 850, 854 (Ind.Tax Ct.1990) (internal citation omitted).

5. Nevertheless, the PTABOA attempts to argue that this Court's holdings in *Wittenberg* and *Raintree* are not applicable in this case because the retirement homes and assisted living facilities in those cases *were* affiliated with religious organizations. (*See* Oral Argument Tr. at 4–8.) As a result, the PTABOA maintains that case law clearly indicates that the charitable purposes exemption can only be granted when a facility such as Bridge-

## 2. "Own, Occupy, and Use"

■■■ The PTABOA next argues that under Indiana Code § 6–1.1–10–16, Grandview is required to "own, occupy, and use" BridgePointe for a charitable purpose. The PTABOA asserts, however, that while Grandview may own BridgePointe, Trilogy occupies and uses it. As a result, the PTABOA maintains that Grandview has failed to satisfy the mandatory requirements of Indiana Code § 6–1.1–10–16(a).

■■■■ This Court has previously held that Indiana Code § 6–1.1–10–16 is not to be read so strictly as to require a single entity to own, occupy, and use a piece of property before it can be exempted from taxation. Indeed:

> If one seeks to reward charities for their activities and to encourage beneficial public service, drafting a statute that severely limits the ability of a charity to organize and operate in an efficient and cost-effective manner would be illogical. To be sure, the words "own, occupy, and use" restrict the activities that may be conducted on the property before an entity will qualify for an exemption.

However, the intent of the legislature is not to force a single charitable entity to achieve a unity of ownership, occupation, and use, but to ensure that the particular arrangement involved is not driven by a profit motive.

*Sangralea Boys Fund, Inc.,* 686 N.E.2d at 958. Consequently, Indiana Code § 6–1.1–10–16 simply requires that property be dedicated to furthering charitable purposes. "Stated differently: a piece of property must be owned for charitable purposes; a piece of property must be occupied for charitable purposes; a piece of property must be used for charitable purposes. Once these three elements have been met, regardless of by whom, the property can be exempt from taxation." *Id.* at 959.

Indiana courts have determined that caring for the aged constitutes a charitable purpose. Grandview owns BridgePointe for the purpose of caring for the aged. In order to carry out that purpose, Grandview uses and occupies BridgePointe as a nursing home and assisted living facility.[6]

Pointe has been founded or organized by a religious organization. (*See* Oral Argument Tr. at 5.)

Because the PTABOA has read these cases in a vacuum, however, it is unable to see the forest from the trees. Admittedly, the facilities in *Wittenberg* and *Raintree* were affiliated with religious organizations; however, the holdings in those cases do not indicate that those facilities received the charitable purposes exemption because of their religious affiliations. Instead, a thorough, and thoughtful, reading of those cases clearly indicates that those facilities' exemptions were based on *how* the facilities were being used. *See, e.g., Raintree Friends Housing, Inc. v. Indiana Dep't of State Revenue,* 667 N.E.2d 810, 816 (Ind.Tax Ct.1996) (stating that the facility's religious affiliation merely lent support to its already existent charitable purpose).

In order for property to receive a charitable purposes exemption, Indiana Code § 6–1.1–

10–16 "merely" requires that the property be owned, occupied, and used for a charitable purpose. The PTABOA wants the Court to read the charitable purposes exemption of Indiana Code § 6–1.1–10–16 as requiring a religious organization to own, occupy, and use property for a charitable purpose. That requirement is not found in the statute and the Court will not put it there. *See F.A. Wilhelm Const. Co. v. Indiana Dep't of State Revenue,* 586 N.E.2d 953, 955 (Ind. Tax Ct.1992) (stating that when the language of a statute is plain and unambiguous, the Court has no power to construe the statute for the purpose of limiting or extending its operation). That is a function proper for the legislature.

6. The Court notes that the parties have advanced different theories as to who actually occupies and uses BridgePointe. (*See* Pet'r Br. at 7 (asserting that Trilogy occupies/uses BridgePointe); Resp't Br. at 9–10 (asserting

Consequently, BridgePointe is owned, occupied, and used for a charitable purpose.

### 3. "Profit Motive"

■ Finally, the PTABOA argues that despite any claims to the contrary, the reality is that BridgePointe is owned, occupied and used for the sole purpose of generating a profit. This reality, the PTABOA asserts, is evidenced by the fact that Grandview is able to pay a $17,000.00 monthly management fee directly to Trilogy. (*See* Pet'r Br. at 5.) Thus, "[i]t is clear that the residents of BridgePointe pay in excess of what is needed to maintain the facility; there is at least $17,000 per month in profit that is paid [first to Grandview and then] to Trilogy." (Pet'r Reply Br. at 3.)

With respect to homes or facilities that provide comfort and care to the aged, Indiana courts have recognized that "charitable" is not necessarily the equivalent of "free." Indeed, as the Indiana Court of Appeals once explained, the fact that residents of such facilities are charged for their stays does not necessarily negate the charitable purpose of the institution, particularly "when it does not appear that the fees are more than sufficient to pay the expenses of maintenance or that the proprietors of the institution derive any profit therefrom." *Methodist Home for the Aged*, 241 N.E.2d at 88–89 (quoting 1921–23 Op. Att'y Gen. 438 (1921)).

In this case, the PTABOA has presented no evidence that the fees charged by Grandview are more than sufficient to pay its expenses. (*See* Oral Argument Tr. at 10–14 (counsel for PTABOA admitting that there was no evidence in the record indicating that BridgePointe's fees were excessive or how BridgePointe's fees compared to the fees charged at other, similar facilities).) Likewise, the PTABOA has presented no evidence that Grandview is deriving a profit from the operation of BridgePointe. Instead, the PTABOA merely points its finger at the fee paid to Trilogy—a BridgePointe operating expense—and says "there's your proof." This does not constitute a prima facie case. See *Heart City Chrysler v. State Bd. of Tax Comm'rs*, 714 N.E.2d 329, 333 (Ind. Tax Ct.1999) (stating that "this Court will not substitute conclusory statements for probative evidence"); *Herb v. State Bd. of Tax Comm'rs*, 656 N.E.2d 890, 893 (Ind. Tax Ct.1995) (stating that "[a]llegations, unsupported by factual evidence, remain mere allegations").

The PTABOA has made several other allegations which it claims "point strongly to a 'for profit' purpose between Grandview and Trilogy, and [therefore] the lack of a charitable purpose." (Pet'r Br. at 9–10.) These allegations are: 1) there are seemingly "suspicious" ties between Ramsey Development (the development company which built BridgePointe), Grandview, and Trilogy; 2) Grandview has "in effect, built this facility for Trilogy ... and now seeks to use its own nonprofit status to provide property tax exemption status to Trilogy[;]" and 3) the management contract between Grandview and Trilogy is nothing more than a lease in disguise.[7]

---

that Grandview constructively occupies/uses BridgePointe through the residents of the facility, as well as the facility's staff, which includes Trilogy).) Given the holding in *Sangralea Boys Fund, Inc.*, however, this Court need not reach a conclusion as to which theory is correct. See *Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs*, 686 N.E.2d 954, 959 (Ind.Tax Ct.1997).

7. The significance of this allegation, the PTABOA argues, is that "a not-for-profit organization cannot maintain its charitable property tax exemption when it leases to a for-profit company, because such an arrangement would be for the financial gain of either one of the parties." (Pet'r Br. at 7 (citing IND. CODE ANN. § 6–1.1–10–37(b) (West 2005) (providing that exempt property, when leased to

(*See, e.g.*, Pet'r Br at 5, 7–10; Cert. Admin. R. at 65; Oral Argument Tr. at 14–17 (footnote added).) In turn, the PTABOA argues that because Grandview, who bore the burden of proof at the Indiana Board hearing, neither "adequately" explained the Ramsey Development/Grandview/Trilogy relationship nor entered into evidence its management agreement with Trilogy, the Indiana Board should have denied Grandview's request for tax-exempt status. In other words, the PTABOA maintains that because Grandview did not offer other evidence at the administrative hearing, the Indiana Board should have denied Grandview's exemption request (or, at very least, requested additional evidence from Grandview). (*See* Pet'r Br. at 9; Pet'r Reply Br. at 4.) The PTABOA is incorrect.

As the party challenging the propriety of an Indiana Board final determination, the PTABOA bears the burden of demonstrating its invalidity. *See Elkhart Maple Lane Assocs.*, 789 N.E.2d at 113 n. 6. To meet this burden requires more than alleg-

ing Grandview "should have done something else"; rather, the PTABOA must show this Court that there is probative evidence in the administrative record contradicting Grandview's prima facie case evidence that BridgePointe was owned, occupied and used for a charitable purpose. *See id.* (citation omitted). It has not, and therefore the Indiana Board's final determination must stand.[8]

## CONCLUSION

For the foregoing reasons, the Court finds that Grandview "owns, occupies, and uses" BridgePointe for a charitable purpose. Accordingly, the final determination of the Indiana Board is AFFIRMED.

---

an entity whose property is not exempt, becomes taxable as if owned by the lessee); *Sangralea Boys Fund, Inc.*, 686 N.E.2d at 958 (stating "it appears clear that the aim [of Indiana Code § 6–1.1–10–37] was to prevent an entity from qualifying for exempt status and subsequently leasing the property to another non-exempt entity for the financial gain of either of the parties")).)

8. To the extent that the PTABOA believed both an explanation as to the nature of the

Ramsey Development/Grandview/Trilogy relationship, as well as the management agreement between Grandview and Trilogy, were vital to an accurate determination by the Indiana Board, the PTABOA—not Grandview—was responsible for getting that information into the administrative record. The PTABOA could have accomplished this through a variety of discovery tools. Because the PTABOA failed to do so, the Court will not now reweigh Grandview's initial case.