TIPTON COUNTY HEALTH CARE
FOUNDATION, INC. f/k/a Tipton
County Memorial Hospital Founda-
tion, Petitioner,

v.

TIPTON COUNTY ASSESSOR,
Respondent.

No. 49T10–1101–TA–6.

Tax Court of Indiana.

Feb. 16, 2012.

Brent A. Auberry, Daniel R. Roy, Fenton D. Strickland, Faegre Baker & Daniels LLP, Indianapolis, IN, for petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Lynne D. Hammer, Deputy Attorney General, Indianapolis, IN, for respondent.

WENTWORTH, J.

This case concerns whether the Indiana Board of Tax Review (the Indiana Board) properly determined that the Tipton County Health Care Foundation, Inc. (the Foundation) failed to raise a *prima facie* case that its assisted living facility is exempt from property tax under Indiana Code § 6–1.1–10–16. The Court affirms.

## FACTS AND PROCEDURAL HISTORY

In 1998, Tipton County Memorial Hospital (the Hospital) built Autumnwood Village (Autumnwood), an assisted living facility. It is situated on 1.94 acres of land adjacent to the Hospital and two extended care facilities. All four facilities provide Tipton County's aging residents with access to a full continuum of care.

Autumnwood has 40 apartments, a central dining room, laundry rooms, a beauty salon, and several common areas. Many of the facility's amenities are similar to those found in traditional apartment living, but because Autumnwood was designed to meet the unique needs of individuals 55 years of age and older, it also provides amenities and services specifically directed at its aging population. For example, Autumnwood's apartments and common areas have extra-wide hallways and doors for wheelchair access; the hallways, elevators, and restrooms have handrails and grab bars for safety and mobility; all apartment doors are fireproof-rated so residents can wait in their apartments for rescue in the event of fire; and there is access to special security features, weekly transportation services, an emergency response system, on-site nursing, preferential access to certain nursing homes, and a variety of entertainment opportunities.

In late December 2007, the Hospital's Board of Trustees sold Autumnwood to the Foundation. Prior to the sale, the Hospital operated Autumnwood with assistance from Miller's Health Systems, Inc. (Miller's), an Indiana for-profit corporation that owns and operates 30 nursing homes under the name "Miller's Merry Manor" and 10 assisted living communities under the name "Miller's Senior Living" throughout Indiana. Under the terms of a "Management and Consulting Agreement" (the Agreement), Miller's provided consulting services, for a monthly fee, to the Hospital and for a short period to the Foundation with respect to Autumnwood's operations.

Beginning on January 1, 2008, the Foundation leased Autumnwood to Miller's for five years pursuant to a triple net lease (Lease). (*See* Cert. Admin. R. at 434–57.) Under the Lease, the Foundation agreed to deliver exclusive possession of Autumnwood to Miller's, allowing Miller's to either rename Autumnwood consistent with one of its own trade names or continue to operate the facility under its current name. (Cert. Admin. R. at 436.) Miller's in turn agreed to use Autumnwood as an assisted living facility and pay the Foundation an annual base rent and certain other ex-

penses including all utilities and property taxes. (Cert. Admin. R. at 435, 438, 443.) The Lease further stated that:

> [n]othing in th[e] Lease shall be deemed or be construed to render or constitute Landlord and Tenant, actually or constructively and in any or for any purpose, as being partners, joint venturers, or associates, or as having any relationship whatever other than that of Landlord and Tenant under th[e] Lease; nor shall anything in th[e] Lease be deemed or be construed to authorize either party to act as agent for the other party, except to the extent specifically and expressly provided otherwise in th[e] Lease.

(Cert. Admin. R. at 451.)

The Foundation timely filed an "Application for Property Tax Exemption" with the Tipton County Property Tax Assessment Board of Appeals (PTABOA) requesting a charitable purposes exemption for the 2008 and 2009 tax years. The PTABOA denied each. The Foundation filed an appeal with the Indiana Board, an administrative hearing was held, and the Indiana Board issued a final determination finding that the Foundation did not make a *prima facie* case that Autumnwood was entitled to a charitable purposes exemption.

On January 27, 2011, the Foundation filed this original tax appeal. The Court heard oral arguments on November 18, 2011. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

██ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

*See* IND.CODE § 33–26–6–6(e)(1)–(5) (2012).

**ISSUE**

The sole issue before the Court is whether the Foundation failed to raise a *prima facie* case that its assisted living facility is entitled to a charitable purposes property tax exemption under Indiana Code § 6–1.1–10–16.[1]

**LAW**

██ Indiana Code § 6–1.1–10–16 provides that "[a]ll or part of a building is

---

1. The Foundation has also claimed that the Indiana Board both erroneously overruled its objection regarding Indiana Code § 6–1.1–10–37 and failed to consider the evidence as it applied to 2008 and then to 2009 separately. (*See* Pet'r Br. at 2–3, 30–35, 41–42.) The Court need not address the Foundation's first claim because the Indiana Board's resolution of this case was not based on Indiana Code § 6–1.1–10–37. Similarly, the Court need not address the Foundation's second claim because it was not specifically raised or argued at the Indiana Board hearing. *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 220 (Ind. Tax Ct.2000) (*explaining that when a taxpayer fails to raise an issue or present an argument at the administrative level, the issue is waived and may not be considered by this Court on appeal*), *review denied.*

exempt from property taxation if it is owned, occupied, and used by a person for educational, literary, scientific, religious, or charitable purposes." IND.CODE § 6–1.1–10–16(a) (2012). While unity of ownership, occupancy, and use is not required under Indiana Code § 6–1.1–10–16, when it is lacking, as is the case here, each entity must demonstrate that it has its own exempt purpose and explain the nexus between that purpose and its ownership, occupancy, and use of the property. *See Hamilton Cnty. Prop. Tax Assessment Bd. of Appeals v. Oaken Bucket Partners, LLC,* 938 N.E.2d 654, 657 (Ind.2010) (citation omitted); *Sangralea Boys Fund, Inc. v. State Bd. of Tax Comm'rs,* 686 N.E.2d 954, 955 (Ind. Tax Ct.1997), *review denied.*

■ It has long been held that exemption statutes are to be strictly construed against the taxpayer and, therefore, the burden is on the taxpayer to establish its right to an exemption. *See St. Mary's Med. Ctr. of Evansville, Inc. v. State Bd. of Tax Comm'rs,* 534 N.E.2d 277, 281 (Ind. Tax Ct.1989), *aff'd by* 571 N.E.2d 1247 (Ind.1991). To meet its burden, the taxpayer must have made a *prima facie* case[2] at the Indiana Board hearing by submitting probative evidence[3] sufficient to show its property qualifies for exemption. *Brothers of Holy Cross, Inc. v. St. Joseph Cnty. Prop. Tax Assessment Bd. of Appeals,* 878 N.E.2d 548, 550 (Ind. Tax Ct.2007) (footnotes added), *review denied.* Only then does the burden shift to the opposing party to rebut the taxpayer's evidence or, if uncontradicted, the taxpayer's *prima facie* case remains sufficient. *College Corner, L.P. v. Dep't of Local Gov't*

*Fin.,* 840 N.E.2d 905, 907–08 (Ind. Tax Ct.2006) (citation omitted).

## ANALYSIS

■ On appeal, the Foundation first claims that the Indiana Board's determination is contrary to law because it provided probative evidence that Autumnwood was owned, occupied, and used as an assisted living facility. (*See* Pet'r Br. at 10–24, 26–30.) More precisely, the Foundation asserts that because Autumnwood is an assisted living facility that provides for the needs of the elderly, no other evidence is necessary to show that it is entitled to a charitable purposes exemption. (*See* Pet'r Br. at 36–40; Pet'r Reply Br. at 12–15.)

■ To qualify for a charitable purposes exemption, a taxpayer must show " 'relief of human want ... manifested by obviously charitable acts different from the everyday purposes and activities of man in general.' " *National Ass'n of Miniature Enthusiasts v. State Bd. of Tax Comm'rs,* 671 N.E.2d 218, 221 (Ind. Tax Ct.1996) (citation omitted). Indeed, " 'by meeting the needs of the aging, namely, relief of loneliness and boredom, decent housing that has safety and convenience and is adapted to their age, security, well-being, emotional stability, and attention to problems of health, a charitable purpose is accomplished.' " *Wittenberg,* 782 N.E.2d at 488–89 (*quoting Raintree Friends Hous., Inc. v. Indiana Dep't of State Revenue,* 667 N.E.2d 810, 814–15 (Ind. Tax Ct.1996)). Furthermore, Indiana's courts have upheld charitable exemptions in several cases involving nursing homes and the

---

2. *"Prima facie"* means " 'at first sight, on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary.' " *U–Haul Co. of Ind., Inc. v. Indiana Dep't of State Revenue,* 896 N.E.2d 1253, 1256 n. 4 (Ind. Tax Ct.2008) (citations omitted).

3. "Probative evidence is evidence that tends to prove or disprove a point in issue." *Inland Steel,* 739 N.E.2d at 211 (internal quotation and citation omitted).

care of the elderly.[4] Nevertheless, neither the language of one case nor an apparent trend from several cases has established a *per se* rule that an assisted living facility that cares for the elderly is automatically considered exempt by the mere character of its deeds. Rather, as the Court has repeatedly explained, every exemption case stands on its own facts and, therefore, they are not susceptible to bright-line tests or other abbreviated inquiries. *See, e.g., Jamestown Homes of Mishawaka, Inc. v. St. Joseph Cnty. Assessor,* 914 N.E.2d 13, 15 (Ind. Tax Ct.2009), *review denied.* Accordingly, the Foundation has not shown that the Indiana Board's final determination is contrary to law merely because Autumnwood is an assisted living facility.

The Foundation also claims that the Indiana Board's determination is unsupported by substantial evidence because it presented evidence that Miller's has an individual charitable purpose.[5] Specifically, the Foundation argues that the Indiana Board should have considered the content of Miller's website and the Lease as probative evidence that Miller's had its own charitable purpose. (*See* Oral Argument Tr. at 18–25.)

██ When a unity of ownership, occupancy, and use are lacking, like in this case, both entities must provide evidence of their own charitable purposes. *Oaken Bucket,* 938 N.E.2d at 657, 659. Indiana Code § 6–1.1–10–16 requires the showing of a charitable purpose, not simply the accomplishment of good and noble deeds,

to ensure that: 1) the benefit conferred by the exemption relieves government of a cost it would otherwise bear, and 2) the exemption's largess does not primarily fulfill a commercial profit motive. *See Dep't of Local Gov't Fin. v. Roller Skating Rink Operators Ass'n,* 853 N.E.2d 1262, 1265–67 (Ind.2006) (explaining that exemption is improper when the benefits arising from the property's use inure to private entities rather than the public); *Sangralea Boys Fund,* 686 N.E.2d at 959 (explaining the requirements of the exemption "prevent an entity from leasing property to another, for either party's profit, and claiming an exemption").

According to the Foundation, Miller's mission statement, as documented on its website, evidences its charitable purpose:

> The mission of Miller's ... is to be an active presence in the communities we serve. We will specialize in delivering the highest quality of services to those in need. We will treat all individuals with integrity, compassion, and respect. Our goals are to enjoy work, grow in our professional and personal lives, and make a positive difference for those we serve.

(Cert. Admin. R. at 603; *see also* Pet'r Reply Br. at 13–14.) While the mission statement indicates that Miller's is in the business of providing for the needs of the elderly, it does not indicate that public benevolence is its reason for operating. Indeed, Miller's mission statement focuses on its operational goals and what it does,

4. *See, e.g., Knox Cnty. Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc.,* 826 N.E.2d 177 (Ind. Tax Ct.2005); *Wittenberg Lutheran Vill. Endowment Corp. v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals,* 782 N.E.2d 483 (Ind. Tax Ct.2003), *review denied; Raintree Friends Hous., Inc. v. Indiana Dep't of State Revenue,* 667 N.E.2d 810 (Ind. Tax Ct.1996); *State Bd. of Tax Comm'rs v. Method-* ist Home for the Aged of the Ind. Conference of the Methodist Church, Inc., 143 Ind.App. 419, 241 N.E.2d 84 (1968).

5. In its final determination, the Indiana Board focused solely on whether Miller's had a charitable purpose and, therefore, the Court need not discuss the Foundation's charitable purpose. (*See* Cert. Admin. R. at 122 ¶ 28.)

which seems more like an advertisement of its operating style rather than a declaration that it operates solely to advance a charitable purpose. Therefore, at first blush, Miller's mission statement is not indicative of what the Foundation claims.

The Foundation also points to certain provisions of the Lease, where Miller's agreed to use Autumnwood solely as an assisted living facility and to maintain the facility's licenses for that use, as evidence of Miller's charitable purpose. (*See* Oral Argument Tr. at 14–15.) When reviewed in its entirety, however, the Lease seems like another example of a commercial triple net lease, with nearly identical provisions to those in *Oaken Bucket. See Oaken Bucket*, 938 N.E.2d at 655 n. 1 ("A triple-net lease generally requires the landlord to pay for structural repairs while the tenant pays for utilities, property taxes, insurance, and property maintenance") (citation omitted). Thus, the provisions of the Lease indicate how Miller's will use Autumnwood during its tenancy, not that Miller's overall goal or purpose for its use is charitable. In other words, Miller's operation of Autumnwood as an assisted living facility does not mean that it did so to accomplish a charitable purpose. *Cf. id.* at 658–59 (explaining that the leasing of a property to a church did not show that the landlord had its own religious or charitable purpose).

Furthermore, the certified administrative record is deficient regarding whether the arrangement between the Foundation and Miller's was entered into for a public benefit (*i.e.*, charitable purpose) or a private benefit (*i.e.*, a profit motive). According to the Foundation, the Assessor bore the evidentiary burden to produce evidence that the arrangement would result in some private benefit, given that Miller's for-profit status does not show that Miller's actually profited from the arrangement. (*See* Pet'r Br. at 38–40.) Thus, while the Foundation claimed that it derived no profit from the Lease at the Indiana Board hearing, it offered no further evidence or explanation regarding whether Miller's derived a profit from the Lease. (*See, e.g.*, Pet'r Reply Br. at 13–15.)

The taxpayer has the burden to prove that both the Foundation and Miller's lease arrangement is driven by a charitable purpose and not a profit motive. *See Sangralea Boys Fund*, 686 N.E.2d at 958–59. Although an entity's for-profit status alone is not sufficient to show that a lease arrangement will result in private benefit, its status is germane. *Cf. e.g., Spohn v. Stark*, 197 Ind. 299, 150 N.E. 787, 788 (1926) (finding income producing, rental property taxable when used and rented by the Indiana National Guard) *with State Bd. of Tax Comm'rs v. Indianapolis Lodge No. 17, Loyal Order of Moose, Inc.*, 245 Ind. 614, 200 N.E.2d 221, 225 (1964) (exempting dining room from property tax when it was used for both profit and exempt purposes). Given that the record in this case simply does not indicate whether Miller's has a charitable purpose or a profit motive, the Court concludes that the Indiana Board's finding that the Foundation failed to raise a *prima facie* case that Autumnwood is entitled to a charitable purposes exemption under Indiana Code § 6–1.1–10–16 is supported by substantial evidence.

## CONCLUSION[6]

When the Indiana Board's final determination is consistent with the law and sup-

---

6. The Assessor has claimed that the Foundation may not be granted the relief it seeks because it did not show, and was not in fact, prejudiced by the Indiana Board's final determination as required under Indiana Code § 33–26–6–6(e). (*See* Oral Argument Tr. at

ported by substantial evidence, as here, this Court will not substitute its judgment for that of the Indiana Board. Conse- quently, the Court AFFIRMS the final determination of the Indiana Board.

62–63; Resp't Br. at 1–2, 8–9.) Given the Court's disposition of this case, however, it need not address this claim.